E. Ross BUCKLEY, Plaintiff,

v.

DES MOINES TOWN REGISTER, Defendant.

Civ. A. No. 12860, Division D.

United States District Court
E. D. Louisiana,
New Orleans Division.

March 29, 1963.

turn of service of process on the ground that defendant, a foreign corporation, is not required by law to maintain an agent for service of process in Louisiana and has never engaged in any business activities within the State.

Plaintiff sues defendant newspaper for damages growing out of the publication of an alleged false and libelous article as to him which appeared in the Des Moines Register on April 2, 1962, and which stated that the Roman Catholic Archbishop of New Orleans had threatened excommunication by personal letters to Catholics seated on the platform of a militantly segregationist White Citizens Council meeting in New Orleans; that plaintiff, then the Republican candidate for Mayor of New Orleans, was on the platform, but denied receiving such a letter.[1] Several of the newspapers containing the article were circulated in Louisiana by defendant.

The affidavits attached to the motion as well as answers to interrogatories filed by defendant disclose that the Des Moines Register has never qualified to do business in Louisiana and has no registered agent for service of process in the State; that defendant states it has done no business, has no solicitors and that it mails to five subscribers in Louisiana five daily newspapers each day and four on Sunday. The only other connection which the newspaper had with any business activity in Louisiana was an article which appeared in a December 1960 issue written by an author who visited Camp Claiborne, Louisiana, to report on the encampment of the Iowa National Guard there. No news items were purchased from independent or free-lance reporters during the years

Tucker & Schonekas, Gibson Tucker, Jr., New Orleans, La., for plaintiff.

Adams & Reese, George V. Baus, New Orleans, La., for defendant.

AINSWORTH, District Judge.

This is a motion by defendant to dismiss or, alternatively, to quash the re-

---

1. "WOULD EXCOMMUNICATE CATHOLIC INTEGRATION FOES. New Orleans, La.—The Roman Catholic archbishop of New Orleans has threatened several leading segregationists here with excommunication, a high church official disclosed Sunday.

"Personal letters, this source said, went to each Catholic on the platform Friday during a meeting of the militantly segregationist White Citizens Council.

"On the platform then were E. Ross Buckley, Republican candidate for mayor, and Leander Perez, political boss of St. Bernard and Plaquemines Parishes (counties).

"Buckley said he had received no such letter. Perez was out of the city.

\* \* \* \* \*

"Excommunication casts out Catholics from the communion of the church."

1960, 1961 and 1962, nor was there any personal solicitation of business for subscriptions or advertising, during those years, the subscribers who received the paper having written direct to the office of the newspaper in Des Moines, Iowa, in order to secure their subscriptions. A direct mail advertisement offering space in the paper to travel agencies was sent to five travel agencies in Louisiana in 1960, 1961 and 1962. In 1960, 125 inches of advertising were received from a New Orleans advertising agency and about 55 inches from the Louisiana Sweet Potato Commission. In 1960 and 1961, the New Orleans Spring Fiesta paid for 2 inches of advertising and for 4 inches in 1962.

The total business activity of defendant as to Louisiana in 1962, the year of the alleged libel herein, therefore, consisted of mailing five daily newspapers each day and four on Sunday from Des Moines to Louisiana subscribers, plus publication of 4 inches of advertising.

■ In order to be subject to the jurisdiction of this court the defendant must have exercised at least the minimum business contact referred to in International Shoe Co. v. State of Washington, Etc., 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), so that maintenance of the suit

does not offend "traditional notions of fair play and substantial justice."

■■ The facts here disclose such a trivial connection with Louisiana as to exclude a finding of doing business in the State sufficient to subject defendant to the jurisdiction of this court ratione personae. In Insull v. New York World-Telegram Corporation, D.C., 172 F.Supp. 615 (1959), a federal district court in Illinois held that the term transacting business in that State should be limited to acts done by the defendant in Illinois and did not include shipping newspapers into the State from outside. See also Dean Stimson's article "Omnibus Statutes Designed To Secure Jurisdiction Over Out-of-State Defendants," Volume 48, American Bar Association Journal, No. 8 (August 1962). Compare Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). A newspaper corporation is not engaged in a business activity in a state simply because its newspapers are mailed in interstate commerce to subscribers therein.[2]

The business activities of defendant newspaper in Louisiana do not provide even the minimal requirements of the Supreme Court decisions in International Shoe and McGee, supra.[3] This court is therefore without jurisdiction ratione personae and accordingly declines jurisdiction. The motion to dismiss and to quash service is granted.

2. Defendant cites Sonnier v. Time, Inc., W.D.La., 1959, 172 F.Supp. 576, in support of its motion. However, the Louisiana statute then applicable to service of process on foreign corporations, LSA–R.S. 13:3471(5) (d), was amended in 1960 [LSA–R.S. 13:3471(1)] to provide for service on a corporation which "has engaged in a business activity in this state, * * * in an action or proceeding on a cause of action resulting from such business activity in this state." The amendment eliminated the prior requirement that the business activity in the state be done by the corporation's agents or employees in Louisiana (see Explanatory Note to amended LSA–R.S. 13:-3471).

New York Times Company v. Conner, 5 Cir., 1961, 291 F.2d 492, and Connor v. New York Times Co., 5 Cir., 1962, 310 F.2d 133, cited by plaintiff, are based on Alabama statutes and interpretations of the law of libel by the Alabama Supreme Court, and are inapposite.

3. Compare Stanga v. McCormick Shipping Corporation, 5 Cir., 1959, 268 F.2d 544, which held that a nonresident steamship company was not carrying on business in Louisiana where local travel agency booked passenger space and issued a ticket for a voyage wholly outside of state and passenger later sued in Louisiana for injuries, service of process being made on the travel agency.