**Saul SONNIER**

v.

**TIME, INC.**

**Civ. A. No. 7063.**

United States District Court
W. D. Louisiana,
Opelousas Division.
April 7, 1959.

William Harris McBride, Lafayette, La., for plaintiff.

Harold R. Medina, Jr., New York City, Cicero C. Sessions, New Orleans, La., for defendant.

HUNTER, District Judge.

Plaintiff sues defendant, Time, Inc., for damages purportedly resulting from the alleged publication by Time, Inc., of a false advertisement of the Flint-Kote Company in Time's monthly magazine, *House and Home*. Jurisdiction is pegged on diversity.

This is a suit for an alleged libel. Defendant attacks service, and consequently, the jurisdiction of the court, upon the grounds that it is a corporate citizen of New York and is domiciled there, and is not qualified to do business in Louisiana, and has no agent for service of process in Louisiana.[1] The effect of

1. It is admitted that defendant is a corporate citizen of the State of New York; that it has not filed a charter or qualified to do business with the State of Louisiana; and that it has not appointed an agent for service of process in the state.

this contention is that while Sonnier could bring his suit in the federal district court in the corporation's home state of New York, no such suit could be maintained in a federal court in the state where Sonnier lives, and where the alleged false advertisement was likely to do him the most harm.

Numerous affidavits have been submitted. They are attached hereto, accepted as factual, and made a part hereof.

While they are more fully elaborated and differently emphasized by the parties, the facts as fairly summarized reveal in part: that the defendant has a wide circulation in Louisiana, and that third parties, independent contractors and the U. S. Mail are in essence the media by which this end is achieved; that the solicitation, distribution and circulation of defendant's magazines and the promotion thereof were and are a continuous and big business; that Time has expressly authorized twelve representatives to solicit subscriptions for it in the state, seven of whom are classified as "college bureau representatives" and five of whom are classified as "independent representatives"; that defendant has authorized four large organizations to take subscriptions for it to some of its magazines [2] through subscription campaigns promoted through the active solicitation of the school children of Louisiana; all subscription copies of Time, Inc.'s publications are shipped by U. S. Mail direct from Time, Inc.'s printing plants (none of which are in Louisiana); in the case of news stand distribution, the magazines are bundled at the printing plants for distribution by truck or railway express to various local distributors in Louisiana and elsewhere, who in turn distribute the magazines to news stands for sale; the distributors acquire the magazines by outright purchase from Time, Inc.

Service here was made on defendant by serving the Secretary of State of Louisiana, pursuant to LSA–R.S. 13:3471 (5) (d).

### "Doing Business"

■ Defendant insists that its activities within the State were not sufficient to manifest its "presence" there, and that in its absence it was not amenable to suit in the state, and consequently any state statute authorizing suit against it under the circumstances is offensive to the due process clause of the Fourteenth Amendment. Since Pennoyer v. Neff, 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565, the Supreme Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries; but just where this line of limitation falls has been a subject upon which American courts have labored for half a century. Looking back over this long history of litigation, a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other non-residents.[3] A large part of the business in each and every state is today transacted by corporations existing under the laws of another state. To adjust the practical administration of justice to this fact of present day economics the highest court in our land has in recent years refused to be bound by old rigid concepts about "doing business." Rather recently, in International Shoe Co. v. State of Wash., 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, the Supreme Court proclaimed that due process

---

2. Time, Life, Sports Illustrated, Fortune.

3. It is certainly a mistake to assume that this trend heralds the eventual end of all restrictions, because as the Chief Justice pointed out in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 1238, 2 L.Ed.

2d 1283, "These restrictions are more than a guarantee of immunity from inconvenience * * *. They are in consequence of territorial limitations upon the power of the respective States."

requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

Turning to this case, we think it apparent that the due process clause does not preclude Louisiana from enacting legislation, making the defendant amenable to process here. Circulation is the source of life to the magazine publisher. Not only are readers a source of revenue, but their number is an important factor in attracting advertising and determining rates therefor. Whatever the technical legal relationship may be between defendant on the one hand and his Louisiana representatives and Louisiana distributors on the other, the latter are but the conduit between the publisher and the reader, and they certainly establish contacts that are essential to the very existence of this defendant. Certainly, from the standpoint of fair play and substantial justice, this suit should be handled in Louisiana. Certainly, it is true that from the standpoint of convenience the Western District of Louisiana is the forum for the trial rather than New York, where no witnesses are available. The activities of the defendant in Louisiana through its representatives and distributors were neither irregular nor casual. They were and still are systematic and continuous. They result in a large volume of state business, in the course of which defendant received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights. It is evident to us that these operations establish sufficient contacts, or ties, with the State of Louisiana to make it reasonable and just, according to the traditional conception of fair play and substantial justice, to permit the state, if it sees fit to do so, to make the defendant amenable to service of process here.

■ Defendant next contends that the suit must be dismissed under Section 1391(c), Title 28 U.S.C.A. for improper venue. The statute provides:

"(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

Defendant's argument once again is based on the premise that it does not "do business" in Louisiana. This contention is devoid of merit,[4] because the facts present show that the activities of defendant (circulation, sale, subscriptions and the promotion thereof) amounted to "doing business" within both the State of Louisiana and the Opelousas Division of the Western District of Louisiana[5] within the meaning and the purview of International Shoe and McGee, supra.

■ Having decided that the activities by Time, Inc. in Louisiana suffices to give to the state the right to subject defendant to suit in Louisiana without violating the Due Process Clause of the Constitution, and that the defendant is doing business in the district within the intendment of 1391(c), Title 28 U.S.C.A., there remains the question of whether or not Louisiana has chosen to assert jurisdiction within its borders under the circumstances here present. Defendant contends that Louisiana may

---

4. Mr. Justice Black, in his separate opinion in Polizzi v. Cowles Magazines, 345 U.S. 663, 73 S.Ct. 900, 905, 97 L.Ed. 1331, under circumstances we deem analogous with the situation here, commented: "I venture to suggest that if this question were raised anywhere except in a court, it would be dismissed as ludicrous."

5. Olberding v. Illinois Central R. Co., 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39, so strongly relied on by defendant, is not applicable. There, neither plaintiff nor defendant resided in the district, and the case turned on 28 U.S.C.A. 1391 (a). In the case at bar, plaintiff lives in this division and district.

not choose to extend to plaintiffs access to its jurisdiction against foreign corporations as amply as it has the power to do under the Constitution. We agree that this is so. The state statute reads in pertinent part as follows, to-wit:

"If the corporation is not one required by law to appoint an agent for service of process but has engaged in business activities in this state *through acts performed by its employees or agents in this state,* service of process in any proceeding *on a cause of action resulting from or relating to such acts performed in this State* * * * may be made * * * on the Secretary of State * * *." (Emphasis added.)

Obviously, this is a very important statute which extends the jurisdiction of Louisiana to new fields of activities by foreign corporations. It was enacted subsequent to International Shoe, but prior to McGee.

It would seem that the obvious purpose of the Act was to permit Louisiana to entertain all suits against foreign corporations on local causes of action permissible under International Shoe. This was undoubtedly the reason why the act avoids the use of the words "doing business" and uses the words "engaged in business activities." Of course, we are receptive to the purpose implicit in legislation of this sort, but that does not warrant our rationalizing to an ambiguity where, fairly considered, none exists, or extending the generosity of the legislature past the limits to which it went. The Legislature could have, if it had desired, omitted the words italicized in the statute quotation above.[6] It did not do so, and we take the statute as it stands—and as it stands we must conclude that the cause of action here sued upon did not result from and is not legally related to the acts of the employees or agents of the defendant performed in this state. It is not denied,

and it cannot be, that plaintiff has alleged a cause of action. What is the cause of action? It is the alleged publication and circulation of a false advertisement to the detriment of the good name and reputation of plaintiff. This publication and circulation did not result and is not related to any acts of defendant's agents and/or employees within the boundaries of this state. Accordingly, *the motion to quash must be sustained. It is.*

Appropriate order is to be presented.

---

6. The statute could have been enacted to read: "If the corporation is not one required by law to appoint an agent for service of process, but has engaged in business activities in this state, service of process in any proceeding on a cause of action arising in this state may be, etc."