**SHELDON STEEL CORPORATION,**
Plaintiff,

v.

**STANDARD FRUIT COMPANY,**
Defendant.

Civ. A. No. 2484.

United States District Court
D. Delaware.
June 12, 1963.

John T. Gallagher, Wilmington, Del., for plaintiff, Abberley, Kooiman, Anson & Marcellino, New York City, of counsel.

David F. Anderson, Wilmington, Del., Eberhard P. Deutsch, and Rene H. Himel, Jr., New Orleans, La., for defendant.

STEEL, District Judge.

Upon motion of the defendant pursuant to 28 U.S.C.A. § 1404(a), it was held, by oral opinion dated January 15, 1963, that the action should be transferred to the United States District Court for the Eastern District of Louisiana, New Orleans Division. Plaintiff moved for reargument and called to the attention of the Court certain authorities and statutes said to establish that the New Orleans Division was not a division in which the action could have been brought, a condition which § 1404(a) makes indispensable to a transfer. Reargument was granted; and the question was subsequently briefed and argued.

Plaintiff is a New York corporation and defendant is a Delaware corporation. The causes of action sued upon are based upon alleged (i) breaches of a contract under which defendant agreed to sell and plaintiff agreed to buy scrap iron and equipment, and (ii) conversions by defendant of property acquired by the plaintiff in connection with performance of the contract.

Federal jurisdiction exists in any district court solely by reason of diversity of citizenship of the parties and the allegation that the matter in controversy exceeds $10,000, exclusive of interest and costs. 28 U.S.C. § 1332(a) (1).

Federal venue is controlled by 28 U.S.C. § 1391(a) (c) and § 1393(a). Section 1391(a) provides that suit may be brought only in the judicial district where all plaintiffs or defendants reside. Section 1391(c) states that a corporation may be sued in the district in which it is (a) incorporated, or (b) licensed to do business, or (c) is doing business, and that such district shall be regarded as its residence for purposes of venue. Section 1393(a) provides that when there is only one defendant and a district contains more than one division, the action must be brought in the division where the defendant resides.

The defendant was neither incorporated nor licensed to do business in Louisiana. Whether it is "doing business" in the New Orleans Division is the critical venue question.

■ Venue, having been fixed by federal law, must be determined by federal law. Murphree v. Mississippi Pub. Corp., 149 F.2d 138, 140 (5th Cir., 1945), aff'd 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185 (1946). A federal standard must be applied, therefore, in ascertaining whether defendant was "doing business" in the New Orleans Division for purposes of federal venue. The fact that defendant has moved to transfer the action to the New Orleans Division has no venue-waiver relevance in determining whether the action could have been brought initially in that Division. Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

■ Some courts have held that a foreign corporation is "doing business" for purposes of federal venue when its activities are such as would require it to be licensed to do business. Other courts have adopted the "doing business" standard applied in determining the amenability of a foreign corporation to service of process. See 1 Moore's Fed. Practice (2d Ed.) pp. 1499–1500. Sonnier v. Time, Inc., 172 F.Supp. 576 (W.D. La.1959) takes a different approach and holds that a foreign corporation is "doing business" for the purposes of federal venue when its activities are such as to come within the meaning and purview of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). This is a "due process" constitutional criterion. Essentially it turns upon the reasonableness, judged by traditional notions of

fair play and substantial justice, of requiring a foreign corporation to defend. Since the venue is a forum limitation imposed for the convenience of parties, Olberding v. Illinois Central Ry. Co., 346 U.S. 338, 340, 74 S.Ct. 83, 98 L.Ed. 39 (1953); Neirbo v. Bethlehem Ship Building Corp., 308 U.S. 165, 167–168, 60 S.Ct. 153, 84 L.Ed. 167 (1939), the Sonnier rule appears to have much to recommend it.[1]

■ ■ Here, however, it is not necessary to make a choice of venue standards. For under any test defendant appears clearly to be "doing business" in the New Orleans Division.

The undisputed facts are:

■ Defendant was incorporated in Delaware as a Western Hemisphere Trade Corporation under 26 U.S.C. § 921.[2] It maintains offices to conduct operations outside of the United States in Honduras, Costa Rica, Ecuador, Guatemala and Nicaragua. Defendant employs approximately 5,000 people in Honduras. From 1959 to 1962 100% of its business operations were conducted and 100% of its gross income was derived from operations outside of the United States. Since the defendant is engaged exclusively in foreign commerce, there is no requirement under the Louisiana law that it qualify to do business as a foreign corporation in Louisiana and it has not done so.

Defendant has always had its principal business office in New Orleans. Most of defendant's executive officers, including its president, several of its vice presidents, its treasurer, its secretary, and its controller, reside and discharge their functions in New Orleans. All of defendant's directors live in New Orleans where all meetings of its Board of Directors are held. All major decisions as to defendant's business and operations are made in New Orleans. No capital expenditure and no operating expenditure of more than $5,000 may be made by defendant without authorization by its New Orleans office. No employee may be hired at an annual salary above $6,000 without authorization by defendant's New Orleans office. All purchases made by defendant are arranged for by defendant's purchasing department at New Orleans. Its research department is headquartered in New Orleans. The administrative headquarters of defendant's personnel is maintained in New Orleans and all of its key personnel are hired from that office.

It is true that a number of executives and other personnel of defendant employed in New Orleans also render service to defendant's parent, Standard Fruit & Steamship Company, and that the latter corporation has its telephone number listed in the New Orleans telephone directory, while the defendant does not. But these circumstances do not negative the fact that extensive and important administrative activities of the defendant are being continuously carried on in New Orleans. Nor is any

1. Lone Star Package Car Co. v. Baltimore & O. R. Co., 212 F.2d 147, 155 (5th Cir., 1954) recognized that the constitutional standard stated in Sonnier is proper when federal jurisdiction is based in whole or in part upon a federal law. It indicated by way of *dictum*, however, that in a diversity case "doing business" by an unlicensed foreign corporation for purposes of federal venue requires the same kind of activity as would subject the corporation to service of process by the laws of the state where the federal court sits (212 F.2d p. 153).

Neither of the cases relied on in Lone Star Package Car Co., i. e., Pulson v. American Rolling Mills, 170 F.2d 193 (1st Cir., 1948) and Rosenthal v. Frankfurt Distillers Corp., 193 F.2d 137 (5th Cir., 1951) involved federal venue. Both were concerned with the amenability of a foreign corporation to service of process under Rule 4(d) (7). It was solely in this context that they applied state standards of "doing business."

2. Essentially such a corporation is a domestic corporation doing all of its business in the Western Hemisphere, with 95% or more of its gross income being derived outside of the United States, and 90% of such income being derived from the active conduct of a trade or business. Special federal income tax treatment is accorded to such a corporation.

other conclusion required by defendant's answer to an interrogatory in which it says that it did not actively conduct business operations in any state in the United States during 1959 through 1960. This answer, when read in the light of the facts above detailed, none of which are controverted, can mean only that the operating activities of defendant were wholly foreign.

The most logical, and from defendant's standpoint the most convenient, place for defendant to be sued in the United States is in New Orleans where its principal office is located and its principal business in the United States is carried on. Federal venue is proper in the Eastern District of Louisiana, New Orleans Division.

Whether the District Court for the New Orleans Division of the Eastern District of Louisiana could have acquired personal jurisdiction over defendant if it had been sued there initially must be examined.

Service upon one of the officers of defendant in New Orleans could have been made under F.R.Civ.P. 4(d) (3), and resort to service under Louisiana law, although authorized by F.R.Civ.P. 4(d) (7), would not have been necessary. Plaintiff concedes that under any federal test of jurisdictional presence, defendant was amenable to service in New Orleans. Plaintiff's Brief on Motion for Reargument, filed February 16, 1963, pp. 26–27.

Plaintiff argues, however, that LSA–R.S. 13:3471, as amended in 1960, is a bar to the maintenance of this action in the federal court. Section 3471 provides in part:

"If the foreign corporation is not one required by law to appoint an agent for the service of process, but has engaged in a business activity in this state, service of process in an action or proceeding on a cause of action resulting from such business activity in this state, or for any taxes due or other obligations arising therefrom, may be made on any employee or agent of the corporation of suitable age and discretion found in the state. * * * *"

Defendant, being a foreign corporation which is engaged exclusively in foreign commerce, is not required to appoint an agent for service of process,[3] and had not done so. Furthermore, plaintiff acknowledges that the defendant has engaged in a business activity in Louisiana within the meaning of LSA–R.S. 13:3471. Plaintiff's Brief on Motion for Reargument, filed February 16, 1963, pp. 29–30.

It asserts, however, that the cause of action sued upon is not the result of any business activity on defendant's part in Louisiana as is required by LSA–R.S. 13:3471. Upon this premise, plaintiff argues that if the present suit had been brought in a Louisiana state court, the defendant could not have been served, and hence it cannot be subject to process in a federal court sitting in Louisiana, if amenability to federal process in a diversity case is determined by state law.[4]

Whether a state can constitutionally limit the jurisdiction of a federal court over a foreign corporation to a "local"

3. L.S.A.–R.S. 12:202, subd. (A) (2) provides that every corporation, except an insurance company, must appoint an agent upon whom process can be served as a condition to securing authority to do business in Louisiana. This provision is without application to a corporation which is engaged exclusively in foreign commerce. LSA–R.S. 12:205, subd. (A).

4. In Willis v. Weil Pump Co., 222 F.2d 261 (2d Cir., 1955) it is said that any

requirement that a cause of action be "local" when the action is between non-residents is a matter of venue. Cf. Steel Motor Svc., Inc. v. Zalke, 212 F.2d 856, 48 A.L.R.2d 1045 (6th Cir., 1954). If this is so, any requirement of state law that a cause of action be local is irrelevant. Federal venue is a matter of federal law. Murphree v. Mississippi Pub. Corp., 149 F.2d 138, 140 (5th Cir., 1945), aff'd 326 U.S. 438, 66 S.Ct. 242, 90 L. Ed. 185 (1946).

cause of action, when federal jurisdiction is based upon diversity of citizenship, has never been definitively settled by the Supreme Court since Erie R. Co. v. Thompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Prior to Erie, it had been held in Barrow S.S. Co. v. Kane, 170 U.S. 100, 18 S.Ct. 526, 42 L.Ed. 964 (1898) that no such restriction could be constitutionally imposed. The decision was based upon Article III, Section 2 of the United States Constitution, which granted to the United States judicial power over controversies between citizens of different states, and the laws of Congress which created and granted to the then federal circuit courts jurisdiction in diversity of citizenship cases. Although the Barrow opinion has been characterized as "confusing" and has been said to have "neither predecessors nor progeny", Jaftex Corp. v. Randolph Mills, infra, 282 F.2d p. 521, the case had never been expressly overruled. In Partin v. Michaels Art Bronze Co., 202 F.2d 541 (3d Cir., 1953) Chief Judge Biggs, in a concurring opinion, cited Barrow as a basis for stating that in a diversity case the question of jurisdictional "presence" of a foreign corporation must, under the Constitution, be determined by federal and not by state law, unless service is made under F.R.C.P. 4(d) (7).

Nevertheless, since Erie it has been strongly indicated in a number of cases that when the policy of a state in which a federal court sits prevents the maintenance of a state court action, it will likewise bar an action in the federal court sitting in the same state, if federal jurisdiction is based solely on diversity of citizenship. Thus, in Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947) it was held that a North Carolina statute prohibiting a suit for a deficiency judgment was a bar to an action for a deficiency in the federal court in North Carolina. "The essence of diversity jurisdiction is that a federal court enforces State law and State policy. * * * A federal court in North Carolina, when invoked on grounds of diversity of citizenship, cannot give that which North Carolina has withheld." (330 U.S. pp. 191–192, 67 S.Ct. pp. 661–662, 91 L.Ed. 832). In Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949) it was held that a Mississippi statute which barred a non-qualified foreign corporation from suing "in any of the courts of this state" was a bar to an action in the federal court of Mississippi. In Trust Company of Chicago v. Pennsylvania R. Co., 183 F.2d 640, 21 A.L.R.2d 238 (7th Cir., 1950) it was held that an Illinois statute which barred suit in Illinois based upon a death occurring in another state where a right of action existed and the defendant was subject to process, was likewise a bar to an action in the federal court in Illinois. The concurring opinion in Jaftex Corp., infra, states that " * * if New York had a statute stating expressly * * * that a foreign corporation engaging generally in business in New York is not subject to suit on claims arising out of non-New York business", it "would represent [a] legitimate exercise of state policy", and the federal court would be bound by this policy in a diversity case (282 F.2d pp. 521–522). In Sonnier v. Time, Inc., supra, the Court quashed the service upon a foreign corporation upon the ground that the cause of action did not result from or relate to acts performed in Louisiana by the corporation's employees or agents in Louisiana.[5] Whether service had been made under Louisiana law pursuant to F.R. C.P. 4(d) (7), is not clear from the opinion. Compare, also, Cohen v. Beneficial

5. The Court had before it LSA–R.S. 13:-3471(5) (d), as amended in 1950, which was the forerunner of the present statute. The 1950 amendment provided:
"(d) If the corporation is not one required by law to appoint an agent for service of process but has engaged in business activities in this state through acts performed by its employees or agents in this state, service of process in any proceeding on a cause of action resulting from or relating to such acts performed in this State * * * or other obligations arising therefrom may be made on any employee or agent of the corporation, * * * found in this state, * * *."

Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and Bernhardt v. Polygraphic Co., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

Comparable to the question whether the jurisdiction of a federal court can be restricted by state law to a "local" cause of action in a diversity case, is the question whether state law is determinative of jurisdictional "presence" of a foreign corporation in a diversity case. On this latter issue, the courts are divided. Jaftex v. Randolph Mills, 282 F.2d 508 (2d Cir., 1960) holds that federal law is controlling. Kahn v. Maico Co., 216 F.2d 233 (4th Cir., 1954) is to the contrary. See also the concurring opinion in Jaftex, supra, 282 F.2d pp. 516–522. In Partin v. Michaels Art Bronze Co., supra, the court quashed the service of a summons upon the ground that under the laws of Pennsylvania the defendant was not amenable to process. It is not clear whether service was attempted under F.R.C.P. 4(d) (7), which prescribes that service should be made "in the manner prescribed by the law of the state" and that this was the basis of the decision, or whether service had been attempted under Rule 4(d) (3) which contained no "state law" reference and the decision was based strictly on Erie R. Co. v. Thompkins, supra. Judge Biggs pointed to this ambiguity and said that unless the decision was explainable with reference to Rule 4(d) (7), he disagreed with it because in his view the presence of a foreign corporation for purposes of service in a federal court action could not be constitutionally controlled by state law. Professor Moore favors the view federal law is controlling when service is made under F.R.C.P. 4(d) (3). 1A Moore's Fed. Practice (2d Ed.) ¶ 0.317[5], p. 3536.

Fortunately, the troublesome question whether LSA–R.S. 13:3471 was effective to limit the jurisdiction of the Louisiana federal court to a "local" cause of action need not be decided. In the case at bar it is reasonably clear that the cause of action did have its genesis in a business activity of defendant in New Orleans within the intendment of Section 3471.

The contract which Count 1 alleges that defendant breached, is for the sale by defendant to plaintiff of steel, iron and copper scrap, located in Honduras. The contract was negotiated in Honduras, but defendant's final decision to sign the contract was made, and the contract was prepared and executed by the defendant in New Orleans. It was mailed by defendant to New York where it was executed by the plaintiff. It provides that the rights and obligations of the parties shall be construed according to the laws of Louisiana. The contract was not to be performed in Louisiana and it was allegedly breached outside of Louisiana. Although the contract provided that payment should be made to defendant at the Whitney National Bank in New Orleans against an irrevocable letter of credit opened by defendant in favor of plaintiff, this arrangement was apparently changed, for plaintiff opened in defendant's favor a letter of credit with the Royal State Bank of New York which provided for payment in New York. This letter of credit was sent to and received by defendant in New Orleans.

It may be assumed that the conversion alleged in Count 2 occurred outside of Louisiana, although this is not shown by the record.

Whether a cause of action against a foreign corporation is one resulting from a business activity in Louisiana, within the meaning of LSA–R.S. 13:3471, is wholly a question of state law. See the discussion in Stanga v. McCormack Shipping Corp., 268 F.2d 544, 550 (5th Cir., 1959), with respect to § 3471 prior to its amendment in 1960, quoted in fn. 5, supra.

Home Gas & Fuel Co. v. Mississippi Tank Co., 143 So.2d 641 (La.App.1962) is the only Louisiana decision involving service under the 1960 amendment to LSA–R.S. 13:3471 which has been called to the Court's attention or uncovered by

independent research, in which the words "a cause of action resulting from [a] business activity" in Louisiana have been interpreted. There, plaintiff had purchased a butane delivery truck from defendant. The suit was to recover damages from a fire in Louisiana alleged to have been caused by the negligence of the defendant in failing to equip the truck with a safety device. Plaintiff had placed the order by a telephone call from Louisiana to the defendant which was in Mississippi. The defendant had not solicited the order directly. The truck had been manufactured and delivered to plaintiff in Mississippi. Under these facts, the Court held that the cause of action resulted from a business activity of the defendant in Louisiana. This was on the theory that before the sale had been made to plaintiff, the defendant had actively engaged in soliciting business in Louisiana over a long period of time and had sold a great number of its products to people in Louisiana, that persons in Louisiana in the butane business were familiar with the quality of the merchandise sold by defendant, and that plaintiff would not have bought the truck if it had not been familiar with the type of products which defendant had sold in Louisiana. The Court said that the service allowed by the statute was not "limited to a proceeding on a cause of action directly resulting from a business activity carried on" in Louisiana (143 So. 2d p. 646), and concluded that the cause of action "was actually a result of the business activity" of the defendant in Louisiana (143 So.2d p. 646).

Thus, an intermediate appellate court of Louisiana has placed an exceedingly broad interpretation on 13:3471. No other persuasive data is before this court to indicate that this construction of LSA–R.S. 13:3471 would not be followed by the Supreme Court of Louisiana. The decision in Home Gas & Fuel Co. must be accepted as a guide by this Court in applying the statute. See West v. American Telephone & Telegraph Co., 311 U.S. 223, 236–237, 61 S.Ct. 179, 85 L.Ed. 139 (1940); Stanga v. McCormack Shipping Corp., supra, 268 F.2d at 550.

■ While the contract in suit was negotiated by the parties, executed by plaintiff, and was performable and breached outside of Louisiana, there would have been no contract, performance, breach or conversion by defendant of the equipment acquired by plaintiff in connection with the performance of the contract, unless defendant had executed the contract and received the letter of credit. Both of these events occurred in New Orleans. The cause of action therefore is one which resulted from a business activity of the defendant in Louisiana under the broad meaning attributed to R.S. 13:3471 in the Home Gas & Fuel Co. decision.

■ Substantiation of this conclusion is found in the fact that one of the purposes of the 1960 amendment to LSA–R.S. 13:3471 was to enable Louisiana to exercise the full potential of jurisdiction *in personam* over foreign corporations allowed by the Supreme Court of the United States and particularly by International Shoe Co. v. Washington, supra, and McGee v. International Life Ins. Co., supra. See Home Gas & Fuel Co. v. Mississippi Tank Co., supra, 143 So.2d p. 644, fn. 1. The broad constitutional requirement stated in International Shoe for subjecting a foreign corporation to service of process is that the corporation has certain minimum contacts with the forum, and that the maintenance of the suit will not offend against traditional notions of fair play and substantial justice. The court pointed out that the demands of due process would be met if the contacts with the corporation and the state of the forum were such "as to make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit" (326 U.S. p. 317, 66 S.Ct. pp. 158–159, 90 L.Ed. 95). Gauged by this broad standard there can be no question about the amenability of the defendant to process under LSA–R.S. 13:3471, assuming,

without deciding, that it is applicable to an action in the federal court.

It follows that the United States District Court for the Eastern District of Louisiana, New Orleans Division, is a division in which the present action could have been initially maintained. Since, for the reasons stated in this court's earlier oral opinion, the convenience of the parties and of the witnesses will be served and the interests of justice will be furthered by the trial of the action in the New Orleans Division, an order will be entered transferring the action to that Division.