**Frank MANNING, Plaintiff,**

v.

**TIME, INCORPORATED, Defendant.**

**Civ. A. No. 14039, Division D.**

United States District Court
E. D. Louisiana,
New Orleans Division.
Sept. 22, 1964.

John E. Jackson, Jr., Jesse S. Guillot, New Orleans, La., for plaintiff.

Cravath, Swaine & Moore, Harold R. Medina, Jr., New York City, Sessions, Fishman, Rosenson & Snellings, Cicero C. Sessions, New Orleans, La., for defendant.

AINSWORTH, District Judge.

This is a diversity action by a citizen of Louisiana to recover damages from Time, Incorporated, a corporate citizen of New York, for alleged violation of certain "rights of privacy, the rights of property, [and] privileges of complainant." Complainant states that he obtained a copyright registration of a photograph of a certain creation of his known as "Manning's Moonball" as well as a copyright registration of the "moonball" itself. The ball, manufactured in two sizes, 6 and 7 inches in diameter, represents the moon and depicts in color and contour certain technical information pertaining to that satellite. Time, Incorporated, the publisher of Life Magazine, is alleged to have published a photograph of the "moonball" in Life on two occasions without plaintiff's consent and without giving credit to plaintiff as the creator of the object, and purportedly representing it to be copyrighted, manufactured or sold by or through another company known as Grossett & Dunlap, thus having the effect of "destroying the sale of the 'Manning Moonball'" and of perpetrating "upon the public confusion as to who was the originator and/or creator of the 'moonball'."

The matter is before us on the following motions:

1. Motion of defendant to quash service and set aside return of service and to dismiss upon grounds of improper service of process, lack of jurisdiction and improper venue.

2. Motion of defendant to quash subpoena for production of documentary evidence.

3. Motion of plaintiff for production, copying and inspection of documents.

4. Supplemental motion of plaintiff for production, copying and inspection of documents.

5. Supplemental and amended motion of defendant to quash service and set aside return of service and to dismiss upon grounds of improper service of process, lack of jurisdiction and lack of venue.

Defendant contends that this court does not have venue of this action; it denies that it is doing business in Louisiana, asserts that its activities within the State are insufficient to conclude that it is present or "may be found" here, and avers that plaintiff's claim for damages does not result from any of defendant's business activities in Louisiana. Defendant also argues that the claim made by plaintiff is not a personal action for damages under LSA–C.C. Article 2315,[1] but is in the nature of a suit for copyright infringement or of unfair competition joined with a copyright infringement, the jurisdictional basis therefor being 28 U.S.C. § 1338(a)[2] pertaining to copyrights; that this being so, the special venue provisions of 28 U.S.C. § 1400(a)[3] for suits relating to copyrights are applicable rather than the general venue provisions of 28 U.S.C. § 1391(c)[4] permitting a suit against a corporation in any judicial district where it is incorporated, licensed to do or doing business; that the requisites of 28 U.S.C. § 1400(a) cannot be met because it should not be held that defendant "resides or may be found" in this judicial district; therefore, in summary, defendant avers that jurisdiction, venue and proper service of process are lacking, requiring dismissal of this action.

Plaintiff argues that his claim is a personal action for damages under LSA–C.C. Article 2315; that the claim is "extra and outside" of damages for copyright infringement "or mixed in with it but certainly not strictly an action of infringement"; that venue and jurisdictional requirements have been met regardless of whether this is an action in tort or for copyright infringement or a combination of both.

We hold that from the pleadings, affidavits and exhibits, plaintiff has a cause of action over which we have jurisdiction.

Jurisdiction is found either under 28 U.S.C. § 1338(a), which provides for original and exclusive jurisdiction of the district courts in actions arising out of copyrights, or under 28 U.S.C. § 1332, involving civil actions between citizens of different states with the requisite jurisdictional amount, or a combination of both.

Venue lies either under 28 U.S.C. § 1400(a), concerning suits relating to copyrights which "may be instituted in the district in which the defendant or

---

1. "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." LSA–C.C. Article 2315.

2. "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases." 28 U.S.C. § 1338(a).

3. "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a).

4. "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes." 28 U.S.C. § 1391(c).

his agent resides or *may be found*," (emphasis added), or under 28 U.S.C. § 1391(c), permitting suits in any judicial district where a corporation is doing business. We construe the phrase in § 1400(a) "may be found" to mean that a corporation is *found* in any district in which it is doing business.[5] The test under either section is substantially the same.

Defendant has conceded for the purposes of this action that the facts concerning its doing business in Louisiana are essentially the same as they were at the time of the decision of District Judge Edwin F. Hunter, Jr. in Sonnier v. Time, Inc., W.D.La., 1959, 172 F.Supp. 576,[6] in which case affidavits were submitted and summarized by the court as follows:

"[T]hat the defendant has a wide circulation in Louisiana, and that third parties, independent contractors and the U. S. Mail are in essence the media by which this end is achieved; that the solicitation, distribution and circulation of defendant's magazines and the promotion thereof were and are a continuous and big business; that Time has expressly authorized twelve representatives to solicit subscriptions for it in the state, seven of whom are classified as 'college bureau representatives' and five of whom are classified as 'independent representatives'; that defendant has authorized four large organizations to take subscriptions for it to some of its magazines through subscription campaigns promoted through the active solicitation of the school children of Louisiana; all subscription copies of Time, Inc.'s publications are shipped by U. S. Mail direct from Time, Inc.'s printing plants (none of which are in Louisiana); in the case of news stand distribution, the magazines are bundled at the printing plants for distribution by truck or railway express to various local distributors in Louisiana and elsewhere, who in turn distribute the magazines to news stands for sale; the distributors acquire the magazines by outright purchase from Time, Inc."

Defendant has supplemented the affidavits submitted in connection with the Sonnier case which disclose the wide circulation of its publications in Louisiana with an additional affidavit showing the amount of advertising from Louisiana placed in publications of defendant from 1958 through the first quarter of 1964, as well as current information as to defendant's stringers (reporters) and college bureau subscription representatives in Louisiana. An analysis of this information shows that in 1963, when this action was brought, the revenue realized by defendant corporation from Louisiana companies from advertising alone amounted to $241,330, and that thus far for 1964 defendant has sold advertising space in its publications to eight advertisers in Louisiana; there are five editorial stringers and fourteen college bureau representatives in Louisiana who gather news material for defendant and who are authorized to solicit subscriptions for defendant.

We have no hesitancy in finding, as did our brother Judge Hunter in the Sonnier case, that Time, Inc., publisher

5. Houston Fearless Corporation v. Teter, 10 Cir., 1963, 318 F.2d 822; Steinway v. Majestic Amusement Co., 10 Cir., 1949, 179 F.2d 681, 18 A.L.R.2d 179; United States v. Scophony Corporation, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948).

6. The court found that Time, Inc. was doing business in Louisiana, satisfying the federal statute providing that a corporation may be sued in the district in which corporation is doing business; however, because the cause of action sued upon did not result from acts of the employees or agents of the defendant performed in the State (a prerequisite for service of process under LSA–R.S. 13:3471(5) (d)), motion to quash was sustained. Subsequent to the Sonnier decision, the Legislature of Louisiana in 1960 amended LSA–R.S. 13:3471 to drop the prior requirement that the business activity performed in the State be done by the corporation's agent or employees in Louisiana.

of the magazines Time, Life, Fortune, House and Home, and Sports Illustrated, is in fact doing business in Louisiana; that although the percentage of defendant's business in Louisiana is small compared with its total operations, it is substantial and not inconsequential; that this percentage is a constituent part of the totality of the over-all activities of defendant.

In International Harvester Co. of America v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479 (1914), the Supreme Court said:

"We are satisfied that the presence of a corporation within a state necessary to the service of process is shown when it appears that the corporation is there carrying on business in such sense as to manifest its presence within the state, although the business transacted may be entirely interstate in its character."

In International Shoe Co. v. State of Washington, etc., 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the Supreme Court said:

"Since the corporate personality is a fiction, although a fiction intended to be acted upon as though it were a fact, * * * it is clear that unlike an individual its 'presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it."

In the same case the Court said (326 U.S. 310, 66 S.Ct. 154, 158):

"For the terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process."

Finally the Court said in International Shoe, supra (326 U.S. 310, 66 S.Ct. 154, 158), that a corporation is amenable to service of process in a foreign state if the corporation has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Such minimum contacts have been shown in the present case.

Defendant is not only doing business in Louisiana but the alleged cause of action on which this complaint is predicated grows out of and is related to such business or business activities in the alleged publication and circulation on two occasions of Life Magazine in Louisiana of a photograph of plaintiff's "moonball," thus satisfying the requirements of LSA–R.S. 13:3471(1) supra.[7]

Motions of defendant are hereby denied; motions of plaintiff for production, inspection and copying of documents are now moot by virtue of this order and are therefore denied.

7. See also Home Gas & Fuel Co. v. Mississippi Tank Co., La.App., 3 Cir., 143 So.2d 641 (1962) which holds that LSA–R.S. 13:3471, as amended 1960, "may be used whenever a foreign corporation is found to have engaged in any business activity in the state."