TIME, INC., Appellant,

v.

Frank MANNING, Appellee.

No. 22337.

United States Court of Appeals
Fifth Circuit.

Sept. 29, 1966.

Rehearing Denied Nov. 9, 1966.

---

Cicero C. Sessions, New Orleans, La., Cravath, Swaine & Moore, Harold R. Medina, Jr., New York City, Sessions, Fishman, Rosenson & Snellings, New Orleans, La., for appellant.

John E. Jackson, Jesse S. Guillot, New Orleans, La., for appellee.

Before JONES, WISDOM, and GEWIN, Circuit Judges.

WISDOM, Circuit Judge.

The questions for decision relate to jurisdiction and venue.

The complaint alleges that Frank Manning, an amateur astronomer in New Orleans, manufactures plastic "moonballs". One half of "Manning's Moonball" depicts the bright side of the moon; the other half lists information about the moon. In 1953, Manning obtained a copyright registration of a photograph of his "moonball", and in 1955, a copy-

right registration of the "moonball" as a work of a scientific or technical nature. Manning alleges that without his permission Time, Inc., a New York corporation not qualified to do business in Louisiana and having no authorized agent or office in that state, published in Life Magazine photographs both of his moonball and of one manufactured by an alleged infringer; that Time gave him no credit for the invention and represented that the alleged infringer sold "moonballs". As a result, so Manning says, Time destroyed his opportunity to sell his "moonballs" and obscured, perhaps obliterated, his role as their creator.

Time moved to quash service of process, to set aside return of service, to dismiss the action for lack of jurisdiction and venue and, alternatively, to transfer the case from the Eastern District of Louisiana to the Southern District of New York. The district judge denied the motions, although he certified that they "involve controlling questions of law as to which there is substantial ground for difference of opinion, and that an immediate appeal therefrom may substantially advance the ultimate termination of the litigation". Manning v. Time, Inc., E.D.La.1964, 233 F.Supp. 985. This Court granted the petitioner leave to take an interlocutory appeal from the judge's orders denying the motions. 28 U.S.C. § 1292(b). We affirm.

## I.

■ A. The first question the appeal raises is whether the district court has jurisdiction. Manning's theory is that he has a state cause of action, a claim for damages under the general tort article of the Louisiana Civil Code, Article 2315.[1] If he is correct, diversity of citizenship gives the court jurisdiction. 28 U.S.C. § 1332. Time insists that the action is for infringement of the plaintiff's copyright, and that jurisdiction must be based upon 28 U.S.C. § 1338. Whether jurisdiction is grounded on § 1332 or on § 1338 is of little concern at

this point. Under either view, the district court has jurisdiction over the *subject matter* of the action.

B. The thornier problem is whether the district court has personal jurisdiction over the defendant foreign corporation.

■ The Federal Rules of Civil Procedure permit service of process upon a foreign corporation or on a non-resident "in the manner prescribed by the law of the state in which the district court is held * * *". Fed.R.Civ.P. 4(d) (7) & 4(e). Two requirements must be met. First, service must conform to state statutory standards, Sonnier v. Time, Inc., W.D.La.1959, 172 F.Supp. 576. Second, the foreign corporation must have sufficient contacts with the state so that application of the state statute will not offend due process. International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. Service in this case met both requirements.

Time was served through the Secretary of State. Under LSA–R.S. 13:3471(1), "If the foreign corporation is not one required by law to appoint an agent for the service of process, but has engaged in a business activity in this state, service of process in an action or proceeding on a cause of action *resulting from* such business activity in this state * * *" may be made upon the Secretary of State. (Emphasis added.) Thus service in this case would be valid only if Manning's cause of action *resulted* from Time's activities within Louisiana. Time attempts to make much of this restriction. However, Manning's cause of action did result from the defendant's activities in Louisiana.

■ Before 1960, the Louisiana substituted service statute expressly required that the business activities requisite to the assertion of jurisdiction be engaged in "through acts performed by [the corporation's] * * * employees or agents in this state," and that the cause of action result from those acts.

---

1. "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it." La.R.C.C., Article 2315.

LSA–R.S. 13:3471(5) (d) (1950). In Sonnier v. Time, Inc., *supra,* the court held that Time was not amenable to substituted service in a libel action, because the cause of action did not result from the act of Time's employees or agents performed in the State. In response to the Sonnier decision, the Louisiana legislature amended LSA–R.S. 13:3471 to its present form. Now the cause of action need not result from the acts of the corporation's employees in the state, but need result only from the "business activity" of the corporation in Louisiana. Louisiana courts construe this new statute broadly, harmonizing the apparent antagonism between the express limitation contained in the language of the act and the obvious legislative intent to broaden the state's longarm jurisdiction.[2] We have recognized this state policy: "It is apparent that the [new] Louisiana statute is intended to go the permissible limits of due process in exercising this jurisdiction *in personam* over foreign corporations * * *." Buckley v. New York Times Co., 5 Cir. 1964, 338 F.2d 470, 472–473. The district court in Buckley v. Beaumont Enterprise stated the rule as follows:

> [T]he cause of action need only be a part of the chain of activity which created the "minimum contacts", or, that the particular activity which gave rise to the cause of action need only be a natural result of the general business activity of the foreign corporation within the State. 232 F.Supp. 986, 988.

Accordingly, the court applied the statute to a libel action against a foreign corporation whose business activities within the state consisted only of the distribution of newspapers there. The theory was that circulation of the newspaper in Louisiana constituted a publication of the libel, from which the cause of action arose.[3] Regardless of whether Manning's complaint is based upon the Louisiana Civil Code or upon federal copyright law, we think that at least to the extent his moonball business was injured by the Louisiana circulation of Life Magazine, his cause of action "resulted from" Time's business activity in the state. Service on Time through the Secretary of State therefore conformed to LSA–R.S. 13:3471(1).

■ C. The second question pertaining to personal jurisdiction over the defendant is whether in the factual setting of this case service could properly be obtained by conforming to the Louisiana statute. We think that it could. Although the propriety of service issuing from a federal court need not necessarily be tested by the same yardstick as is the constitutional limitation upon service of process from a state court,[4] the latter standard provides a helpful and often-used guideline. See, e. g., Gkiafis v. S.S. Yiosonas, 4 Cir., 1965, 342 F.2d 546, 548–549, 554; Lone Star Package Car Co. v. Baltimore & O. R. R., 5 Cir. 1954, 212 F.2d 147, 155; Note, 69 Harv.L.Rev. 508–09 (1956). This yardstick derives from the Supreme Court's holding in *International Shoe,* that the fourteenth amendment permits a state court to ex-

2. See Babineaux v. Southeastern Drilling Corp., La.Ct.App. 3 Cir.1965, 170 So.2d 518, 524; Covington v. Southern Specialty Sales Co., La.Ct.App. 1 Cir. 1963, 158 So. 2d 79, 83–84; Home Gas & Fuel Co. v. Mississippi Tank Co., La.Ct.App. 3 Cir. 1962, 143 So.2d 641. See also Sheldon Steel Corp. v. Standard Fruit Co., D.Del. 1963, 219 F.Supp. 521, 526–527.

    In his note explaining the 1960 amendment to LSA–R.S. 13:3471, Professor McMahon of the Louisiana State University Law School said that it was designed to permit the courts "to exercise the full potential of jurisdiction in personam over

foreign corporations allowed by recent decisions of the United States Supreme Court. * * *"

3. The precise holding of this case has, of course, been put in question by our recent decision in New York Times Co. v. Connor, 5 Cir., August 4, 1966, 365 F.2d 567. *Connor* does not, however, undermine the court's construction of the Louisiana statute.

4. See American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts. Official Draft 191 (1965) (Supporting Memorandum B).

ercise jurisdiction over only those foreign corporations which have "certain minimum contacts with * * * [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, supra, 326 U.S. at 316, 66 S.Ct. at 158. Time's contacts in Louisiana meet this test. Although the record does not disclose the circulation figures for Time's publications (Time, Life, Fortune, House & Home, and Sports Illustrated) in Louisiana, the district judge found that they had "wide circulation" in the state. 237 F.Supp. at 988. In addition he found that the defendant earned a significant amount of advertising revenue in Louisiana ($241,330 in 1963), maintained 14 college bureau representatives and four independent organizations in the state for the purpose of soliciting subscriptions, and gathered news there through five editorial stringers.

In Buckley v. New York Times Co., we held that "mere circulation of a periodical through the mails to subscribers [5] and independent distributors * * *" and "sporadic news gathering by reporters on special assignment and the solicitation of a small amount of advertising do not constitute doing business nor engaging in business activity." 338 F.2d at 474. But that is not this case. In Buckley the number of copies distributed in the state by the respective defendants ranged from five to something less than 1800—hardly "wide circulation." [6] None of the defendants actively solicited subscriptions, and only one engaged in sporadic solicitation of advertising in Louisiana. None had a continuing arrangement for the gathering of news there. Here Time engaged in all of these activities to a significant

extent. Its circulation was wide, it regularly solicited subscriptions, and it maintained editorial stringers. By coming into the state to engage in these activities, Time reaped substantial economic benefits from the state and took advantage of the protections offered by the law of Louisiana.

In Elkhart Engineering Corp. v. Dornier Werke, 5 Cir. 1965, 343 F.2d 861 the Court held that the tortious damage caused by a single airplane crash within a state fulfilled the minimum contacts requirement under the Alabama long-arm statute. We discussed both Buckley and Elkhart in a very recent libel case, New York Times Co. v. Connor, August 4, 1966, 365 F.2d 567, where we held the Times not subject to the jurisdiction of an Alabama federal court. The Court distinguished the Elkhart situation:

"First Amendment considerations surrounding the law of libel require a greater showing of contact to satisfy the due process clause than is necessary in asserting jurisdiction over other types of tortious activity. This is not a new proposition. Judge Brown suggested such a possibility in his dissent in Buckley. 338 F.2d at 476. Indeed, this Court in Walker v. Savell, 5th Cir. 1964, 335 F.2d 536, 544, approved such a distinction which Mississippi courts apparently follow "because of the inherent danger or threat to the free exercise of the right of freedom of the press if jurisdiction in every state can be inferred from minimal contacts. Cf. New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.""

Here of course, no First Amendment considerations make this a special case.

Under the decisions of this Court and treating the Louisiana long-arm statute

5. The Buckley case involved suits against seven defendant newspapers. The Court stated, expressly in five cases and implicitly in a sixth, that the subscriptions were unsolicited. In the seventh case, the Court said nothing with regard to the source of the subscriptions, but the implication would seem to be that they were unsolicited.

6. The only defendant circulating more than forty-three copies within the state was the New York Times, which distributed 391 copies of its daily edition and 1784 copies of its Sunday edition in Louisiana. As to the Times, Judge Brown dissented on the ground that these figures established sufficient contact with the state to allow the exercise of jurisdiction.

as being as broad as the permissible limits of the due process clause, Time is amenable to service of process from the district court in Louisiana.

## II.

◼ The next problem raised by Time's appeal is whether venue was proper in the Eastern District of Louisiana. At this point the parties' different theories of the cause of action appear to be of some moment. If, as Manning contends, his claim is a state claim founded on Article 2315 of the Louisiana Civil Code and the jurisdiction of the court rests upon diversity of citizenship only, the suit may be brought in the district where Time is "doing business" or where the plaintiff resides. 28 U.S.C. § 1391 (a) and (c). If, as Time contends, the cause of action is a federal claim under the copyright law and the basis of jurisdiction is 28 U.S.C. § 1338, the suit may be brought only in the district where the defendant "resides or may be found". 28 U.S.C. § 1400(a).[7] Since Manning is a resident of New Orleans, venue in the Eastern District of Louisiana is clearly proper under section 1391(a). And since we conclude that venue is also proper under section 1400(a), we need not resolve the parties' dispute over the nature of the action.

◼ Jurisdiction and venue, while comprising many of the same considerations, are not the same thing. See 113 U.Pa.L.Rev. 945, 947–49 (1965). Both are designed to test the fairness to the defendant and the degree of inconvenience caused him by requiring him to litigate in a particular court. See International Shoe Co. v. Washington, supra 326 U.S. at 317, 66 S.Ct. 154; Note, 69 Harv.L.Rev. 508 (1956). But jurisdiction is relatively more concerned with fairness and venue more with inconvenience. If the two concepts should be described as applying along a continuum,[8] one extreme might be demonstrated by the case in which the corporate defendant's contacts with the forum were so minimal that it would be patently unfair, let alone inconvenient, to require him to defend an action there. Due process would say that the forum lacked jurisdiction. See e. g., Buckley v. New York Times Co., supra 338 F.2d at 475; International Shoe Co. v. Washington, supra 326 U.S. at 317, 66 S.Ct. 154. At the other extreme would be the case in which not only were jurisdiction and venue proper, but the inconvenience caused the corporation by requiring it to defend the suit where brought would be so slight that a motion for discretionary transfer under 28 U.S.C. § 1404(a) would be denied. See, e. g., Savioa Film S.A.I. v. Vanguard Films, S.D.N.Y.1950, 10 F.R.D. 64. Between the extremes are those cases in which jurisdiction exists, but the inconvenience of requiring the defendant to defend the suit where brought is so substantial that Congress, through the venue provisions of the Judicial Code, has prohibited the maintenance of suit there, and those suits which must be dismissed under the doctrine of *forum non conveniens* even though the venue of the original court was proper. See Gulf Oil Corp. v. Gilbert, 1947, 330

7. The "doing business" definition of corporate residence in 28 U.S.C. § 1391(c) does not apply to the residence requirement of 28 U.S.C. § 1400(a), because the latter is "a special venue statute applicable, specifically, to *all* defendants in a particular type of actions * * *." Fourco Glass Co. v. Transmirra Prods. Corp., 1957, 353 U.S. 222, 228, 77 S.Ct. 787, 791, 1 L.Ed.2d 786. Only the state of incorporation is the residence of a corporation sued for patent infringement. Wright, Federal Courts 132 (1963).

8. See Judge Learned Hand's discussion in Latimer v. S/A Industrias Reunidas F.

Matarazzo, 2 Cir. 1949, 175 F.2d 184, 186:
"It may still be true that in theory the issue as to jurisdiction is different from that as to forum non conveniens; for due process may be compatible with situations of greater inconvenience to the corporation than those inconveniences which would support the plea. Nevertheless, whatever will support the plea will excuse the defendant from defending the suit; yet, if it fails in supporting the plea, it will also fail in any attack upon the jurisdiction."

U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055. It is with the first of these intermediate cases that we are now concerned.

Congress may, of course, establish different venue requirements for various kinds of cases, depending on its estimation of the relative inconvenience of requiring a defendant to litigate in a particular forum.[9] It has decided that copyright actions may be brought in the district where the defendant resides or may be found. 28 U.S.C. § 1400(a). The question is whether Time meets this standard.

In a case arising long ago under language identical to that of section 1400 (a), the Supreme Court held that for a corporation to be found within a district, "it must be present in the district *by its officers and agents carrying on the business of the corporation.* In this way only can a corporation be said to be 'found' within the district." People's Tobacco Co. v. American Tobacco Co., 1918, 246 U.S. 79, 84, 38 S.Ct. 233, 234, 62 L.Ed. 587. (Emphasis added.) That case was decided long before substituted service statutes had been accorded the breadth of operation which they have today, and the Court almost certainly was not thinking of their impact on the problem before it. Nonetheless there is a certain anomaly in saying that a defendant has been "found" in a district when in fact process has been served upon him pursuant to a statute which operates only when he *cannot* be found there.[10] The difficulty is, however, largely verbalistic.

The resolution of this problem may best be approached by examining another, more restrictive, venue provision, 28 U.S.C. § 1391(c). From our earlier discussion of Time's business activities in Louisiana, it is clear that the corporation meets the "doing business" test of that section. It is arguable that to establish proper venue under section 1391

(c), more "contacts," and hence a lesser chance of inconvenience to the defendant, must be shown than is necessary to establish proper substituted service. See Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir. 1949, 175 F.2d 184, 186; Note, 69 Harv.L.Rev. 508, 515, 518–19 (1956). But whatever additional contacts may be necessary to establish proper venue are, we think, present here. Venue would therefore be proper under 28 U.S.C. § 1391(c) were that the appropriate standard.

Examination of the history of the various venue statutes reveals that, contrary to Time's contention, 28 U.S.C. § 1400(a) provides less rather than more restrictive venue standards than does either section 1391(c) or section 1400(b). As the Supreme Court pointed out in Stonite Prods. Co. v. Melvin Lloyd Co., 1942, 315 U.S. 561, 563, 62 S.Ct. 780, 86 L.Ed. 1026, the original venue provisions of the Judiciary Act of 1789 permitted all civil actions to be brought where the defendant resided or was found. "The abuses engendered by this extensive venue prompted the Act of March 3, 1887 * * *," Ibid., which restricted venue in diversity and federal question actions. Venue was specifically restricted for patent infringement actions by the Act of March 3, 1897, which has been substantially carried forward to become 28 U.S.C. § 1400(b). Section 1400(a), however, retains the same "extensive venue" as existed in the original Judiciary Act. We recognize that § 1391(c) does not apply directly to § 1400(a);[11] but it would indeed be anomalous to hold that a corporate defendant sufficiently present in a district to meet the residence requirements, as defined by § 1391(c), for general federal question venue is not sufficiently there to meet the less restrictive standard of § 1400(a). This is not to say that "doing business" and

---

9. Compare, for example, the venue requirements prescribed in 28 U.S.C. § 1400(a) for copyright actions and those of 28 U.S.C. § 1400(b) for patent actions.

10. LSA–R.S. 13:3471(1) provides:
    If such employees or agents are no

longer in the state, or cannot be found after diligent effort * * * the court shall order that service shall be made on the secretary of state. * * *

11. Fourco Glass Co. v. Transmirra Prods. Corp., supra.

"found" are precise equivalents. A corporation may be found where it is not doing business. But if a corporation is doing business in a district for § 1391(c) purposes, it may be found there for the purposes of § 1400(a). We conclude, therefore, that whether § 1391(a) or § 1400(a) properly governs venue in this case, Time's business activity in Louisiana was sufficiently extensive that requiring the corporation to defend this action there will not vitiate the venue protection granted the defendant by either section.

### III.

■■■■■ Finally we come to Time's motion for a discretionary transfer of venue to the Southern District of New York under 28 U.S.C. § 1404(a).[12] That section provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The plaintiff's statutory privilege of choosing his forum is a factor, held in varying degrees of esteem, to be weighed against other factors in determining the convenient forum. 1 Barron & Holtzoff, Federal Practice & Procedure (Wright ed.) § 86.3. At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed. "Plaintiff's privilege to choose, or not to be ousted from, his chosen forum is highly esteemed". Rodriguez v. Pan American Life Ins. Co., 5 Cir. 1962, 311 F.2d 429, 434. In an attempt to assume this burden, Time offers several impressive contentions. It argues that Manning will subpoena many of Time's business records located in New York. Time insists that trial in Louisiana will require expensive depositions from at least fourteen witnesses who live in the New York area, and that in the event the claim is founded on state law, a New York federal court would be more familiar with the applicable New York law. Finally, Time suggests that since the Eastern District of Louisiana has a large backlog of cases, the quicker trial in New York would serve the public interest.

While these are all relevant considerations, the district judge's opinion indicates that he considered them. In addition he noted:

> Plaintiff too will be similarly imposed upon if this matter is tried in New York. There are a number of witnesses residing in this district upon whose testimony plaintiff intends to rely, and the expense involved in providing for their transportation and incidental costs would be burdensome.

We might add, in response to Time's argument that a federal court in New York will be better able to apply New York law than will a Louisiana district court, that Manning's claim is allegedly founded upon a Louisiana statute, Article 2315 of the Louisiana Civil Code. If this contention is well founded, a federal court in Louisiana presumably would be better equipped to apply the appropriate state law than would the New York district court.

■■■■■ The determination whether the circumstances warrant transfer of venue is "peculiarly one for the exercise of judgment by those in daily proximity to these delicate problems of trial litigation." Lykes Bros. S.S. Co. v. Sugarman, 2 Cir. 1959, 272 F.2d 679, 680. While Time's reasons for transfer have merit, we cannot say, after carefully reviewing the opposing considerations, that the district judge abused his discretion in denying the motion to transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

We affirm the orders of the district court denying Time's several preliminary motions, and remand for further proceedings consistent with this opinion.

---

12. Time also moved to dismiss or transfer the action under 28 U.S.C. § 1406(a). That section applies only to "a case laying venue in the wrong division or district * * *." Since we have determined that venue in the Eastern District of Louisiana is proper, § 1406(a) is unavailable to Time, as the district court correctly concluded.