GUSSIE LEE STUBBS, FLORENCE STEVENSON AND FANNIE M. DOSS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS, v. SECURITY CONSUMER DISCOUNT COMPANY, A PENNSYLVANIA CORPORATION, KENBEE MORTGAGE COMPANY, A NEW JERSEY CORPORATION, LEONARD MOONBLATT, ROBERT HUBER, ANTHONY CAVUTO, ROBERT L. MALATESTA, ADMINISTRATOR OF THE STATE OF LOUIS J. MALATESTA, DECEASED, AND FIDELITY BANK, A PENNSYLVANIA CORPORATION, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided November 23, 1976.

*Mr. Kenneth E. Meiser* for plaintiffs (*Mr. Stanley C. Van Ness,* Public Advocate, attorney).

*Mr. Steven G. Wolschina* for defendant Fidelity Bank (*Messrs. Brown, Connery, Kulp, Wille, Purnell & Greene,* attorneys).

ROSSETTI, P. J. D. C., Temporarily Assigned. This is a motion to dismiss for lack of *in personam* jurisdiction of this court made by defendant Fidelity Bank, a foreign bank chartered by the Commonwealth of Pennsylvania and which maintains no offices or branches in the State of New Jersey.

Plaintiffs instituted a class action which arises out of numerous secondary mortgages obtained from New Jersey homeowners by Security Consumer Discount Company, a now defunct New Jersey secondary mortgage company. Plaintiff class is seeking to set aside these mortgages, alleging that they are in violation of the New Jersey Secondary Mortgage Loan Act, *N. J. S. A.* 17:11A–34 *et seq.*, and is additionally seeking money damages under the Consumer Fraud Act, *N. J. S. A.* 56:8–1 *et seq.*

The issue raised by this motion is whether Fidelity's relationship with Security in the State of New Jersey is of such a nature that it will offend "traditional notions of fair play and substantial justice" to maintain jurisdictional authority over it. *International Shoe Co. v. Washington,* 326 *U. S.* 310, 311, 66 *S. Ct.* 154, 90 *L. Ed.* 95 (1945).

Security commenced operations in the early 1960s with an initial capital of $150,000. It obtained loans from Fidelity beginning in the early 1960s in the Commonwealth of Pennsylvania where Security had its principal place of business. In January 1966 Fidelity acquired a collateral interest in Security's Pennsylvania assets.

Security commenced operations in the State of New Jersey in or about 1969. In 1972 Fidelity perfected a security interest to ensure its loans by filing financing statements in New Jersey and taking assignments of all the secondary mortgages Security had acquired on New Jersey realty. During the course of their relationship Fidelity was the primary and substantial source of Security's assets, *i. e.,* outstanding mort-

gages, and was the source of monies for the loans Security made. In the case of a foreclosure sale all monies obtained from that process went directly to Fidelity, which was characteristic of the degree of involvement between the two corporations. Security is no longer an operating concern. Defendant Kenbee Mortgage Company, a corporation which is conceded to be wholly controlled by Fidelity, is currently servicing all the New Jersey mortgages on behalf of Fidelity. The volume of outstanding loans from Fidelity to Security apparently exceeded $1,000,000, and the current balance is approximately $400,000.

██ It has been clearly established in New Jersey that our courts can maintain jurisdiction over foreign corporations subject only to the constraints of due process. *E. g., Avdel Corp. v. Mecure*, 58 *N. J.* 264, 268 (1971); *Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 *F. Supp.* 219, 231 (D. N. J. 1966); *Egan v. Fieldhouse*, 139 *N. J. Super.* 220, 223 (Law Div. 1976). It is equally clear that

* * * due process in this context is coextensive with fundamental notions of fairness and demands only that the extent and nature of defendant's contacts in or with this State or in respect of a cause of action arising in this State, or in respect of a matter of legitimate state concern, be sufficient, under the circumstances of the controversy and as a matter of substantial justice and fair play, to justify the exercise of extraterritorial judicial power by this State. [*Egan v. Fieldhouse, supra* at 223]

Contrary to the position taken by Fidelity, the determination of its vulnerability to suit in this State does not revolve around whether or not it was "doing business" in New Jersey in the traditional sense. See *Amercoat Corp. v. Reagent Chemical Corp.*, 108 *N. J. Super.* 331, 340–41 (App. Div. 1970). As most recently stated in *Unicon Investments v. Fisco*, 137 *N. J. Super.* 395 (Law Div. 1975):

*We do not require the physical purposeful doing of some act within New Jersey, nor do we require the transaction of business within our State in person or through an agent * * ***

In New Jersey there are special problems in commercial transactions since this State is situated in a commercial corridor between highly developed areas of New York and Pennsylvania, * * *

It is sufficient under *Avdel Corp. v. Mecure, supra,* that an out-of-state defendant enter into an agreement which he knew or *should have known* would have substantial effects in New Jersey. [at 402–03; emphasis supplied].

What is of controlling importance in determining the jurisdictional scope of this court is the "quality and nature of the contacts" Fidelity maintained with this State. *Feldman v. Bates Mfg. Co.,* 143 *N. J. Super.* 84, 89 (App. Div. 1976). In *Feldman* the Appellate Division discussed some of the more significant criteria to be considered by our courts in evaluating the "fairness" of maintaining jurisdiction over a foreign corporate defendant. It should be pointed out that these factors are not dispositive in all cases and, in fact, "the judicial power of the forum * * * depends in each case on the peculiar circumstances and the cause of action involved * * *." *Japan Gas Lighter Ass'n v. Ronson Corp.,* 257 *F. Supp.* 219, 232 (D. N. J. 1966).

Having stated this note of caution to a dogmatic application of the contacts considered significant in *Feldman,* this court believes that the enumerated criteria in *Feldman* are particularly relevant to this motion, *i. e.,* (1) that New Jersey has a special interest in supervising defendant's conduct; (2) the plaintiff class are residents of this State and hence will be bound by a determination of a court of this State, and (3) that there be a fund situate in the State of New Jersey.

The secondary mortgage industry in the State of New Jersey is a highly regulated one and the Legislature has established a policy, as evidenced by the New Jersey Secondary Mortgage Loan Act, *N. J. S. A.* 17:11A–34 *et seq.,* to protect the citizens of this State from unfair business practices by secondary mortgage lenders. See, *e. g., City Consumer Services, Inc. v. Dept. of Banking,* 134 *N. J. Super.* 588 (App. Div. 1975); *Crescent Investments Co. v. Commissioner of*

*Banking,* 103 *N. J. Super.* 11 (Ch. Div. 1968). As such, the State has a "special interest" in supervising the conduct of corporate entities who enter into agreements which have substantial effects upon this industry. Accord *Oxford Consumer Discount Co. of North Philadelphia v. Stefanelli,* 102 *N. J. Super.* 549 (App. Div. 1968); *H. I. M. C. Inv. Co. v. Siciliano,* 103 *N. J. Super.* 27 (Law Div. 1968). The relationship between Fidelity and Security was not one of a series of isolated involvements. On the contrary, Fidelity was an integral part of the secondary mortgage business of Security. It appears clear that Security could not have been engaged in the secondary mortgage loan business in the State of New Jersey to the extent that it was without the continuing financial involvement and assistance of Fidelity. The very foundation of a secondary mortgage loan business is the requisite funds to continue making the loans. The language of *Japan Gas Lighter Ass'n v. Ronson Corp., supra,* typifies the nature of the relationship between Fidelity and Security:

\* \* \* The ties by which these interests are promoted are not merely emphathetic encouragement; they are concretely embodied in a continuous stream of business correspondence \* \* \* financial and technical assistance and other contacts \* \* \* [257 *F. Supp.* at 234]

Additionally, the basic purpose of this action is to set aside the mortgages on properties situate in the State of New Jersey; the "equitable owner" of these mortgage contracts is Fidelity; the recipient of all payments on these mortgage contracts is Fidelity; the defendant which would be most affected by a judgment in this case in favor of plaintiffs is Fidelity; all plaintiffs are residents of this State and a judgment in this matter would affect numerous documents recorded in this State. Clearly, this court is the proper forum for the adjudication of these issues.

Returning to the language of *Unicon Investments v. Fisco,* 137 *N. J. Super.* 395, 402–03 (Law Div. 1975), certainly Fidelity "knew or should have known" that their de-

gree of involvement with a secondary mortgage lender in the State of New Jersey would have "substantial effects" upon a highly controlled industry of this State and has, therefore, made itself subject to the jurisdiction of this State and of this court. It cannot at this point claim immunity from suit merely because its corporate existence in a legal sense is in a different state.

Accordingly, Fidelity's motion for dismissal for lack of jurisdiction is denied.