## INTERNATIONAL SHOE CO. *v.* STATE OF WASHINGTON ET AL.

No. 107.  Argued November 14, 1945.—Decided December 3, 1945.

*Mr. Henry C. Lowenhaupt,* with whom *Messrs. Law-rence J. Bernard, Jacob Chasnoff* and *Abraham Lowen-haupt* were on the brief, for appellant.

*George W. Wilkins,* Assistant Attorney General of the State of Washington, with whom *Smith Troy,* Attorney General, and *Edwin C. Ewing,* Assistant Attorney General, were on the brief, for appellees.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

The questions for decision are (1) whether, within the limitations of the due process clause of the Fourteenth Amendment, appellant, a Delaware corporation, has by its activities in the State of Washington rendered itself amenable to proceedings in the courts of that state to recover unpaid contributions to the state unemployment compensation fund exacted by state statutes, Washington Unemployment Compensation Act, Washington Revised Statutes, § 9998–103a through § 9998–123a, 1941 Supp., and (2) whether the state can exact those contributions consistently with the due process clause of the Fourteenth Amendment.

The statutes in question set up a comprehensive scheme of unemployment compensation, the costs of which are defrayed by contributions required to be made by employers to a state unemployment compensation fund.

The contributions are a specified percentage of the wages payable annually by each employer for his employees' services in the state. The assessment and collection of the contributions and the fund are administered by appellees. Section 14 (c) of the Act (Wash. Rev. Stat., 1941 Supp., § 9998–114c) authorizes appellee Commissioner to issue an order and notice of assessment of delinquent contributions upon prescribed personal service of the notice upon the employer if found within the state, or, if not so found, by mailing the notice to the employer by registered mail at his last known address. That section also authorizes the Commissioner to collect the assessment by distraint if it is not paid within ten days after service of the notice. By §§ 14e and 6b the order of assessment may be administratively reviewed by an appeal tribunal within the office of unemployment upon petition of the employer, and this determination is by § 6i made subject to judicial review on questions of law by the state Superior Court, with further right of appeal in the state Supreme Court as in other civil cases.

In this case notice of assessment for the years in question was personally served upon a sales solicitor employed by appellant in the State of Washington, and a copy of the notice was mailed by registered mail to appellant at its address in St. Louis, Missouri. Appellant appeared specially before the office of unemployment and moved to set aside the order and notice of assessment on the ground that the service upon appellant's salesman was not proper service upon appellant; that appellant was not a corporation of the State of Washington and was not doing business within the state; that it had no agent within the state upon whom service could be made; and that appellant is not an employer and does not furnish employment within the meaning of the statute.

The motion was heard on evidence and a stipulation of facts by the appeal tribunal which denied the motion

and ruled that appellee Commissioner was entitled to recover the unpaid contributions. That action was affirmed by the Commissioner; both the Superior Court and the Supreme Court affirmed. 22 Wash. 2d 146, 154 P. 2d 801. Appellant in each of these courts assailed the statute as applied, as a violation of the due process clause of the Fourteenth Amendment, and as imposing a constitutionally prohibited burden on interstate commerce. The cause comes here on appeal under § 237 (a) of the Judicial Code, 28 U. S. C. § 344 (a), appellant assigning as error that the challenged statutes as applied infringe the due process clause of the Fourteenth Amendment and the commerce clause.

The facts as found by the appeal tribunal and accepted by the state Superior Court and Supreme Court, are not in dispute. Appellant is a Delaware corporation, having its principal place of business in St. Louis, Missouri, and is engaged in the manufacture and sale of shoes and other footwear. It maintains places of business in several states, other than Washington, at which its manufacturing is carried on and from which its merchandise is distributed interstate through several sales units or branches located outside the State of Washington.

Appellant has no office in Washington and makes no contracts either for sale or purchase of merchandise there. It maintains no stock of merchandise in that state and makes there no deliveries of goods in intrastate commerce. During the years from 1937 to 1940, now in question, appellant employed eleven to thirteen salesmen under direct supervision and control of sales managers located in St. Louis. These salesmen resided in Washington; their principal activities were confined to that state; and they were compensated by commissions based upon the amount of their sales. The commissions for each year totaled more than $31,000. Appellant supplies its salesmen with a line of samples, each consisting of one shoe of a pair, which

they display to prospective purchasers. On occasion they rent permanent sample rooms, for exhibiting samples, in business buildings, or rent rooms in hotels or business buildings temporarily for that purpose. The cost of such rentals is reimbursed by appellant.

The authority of the salesmen is limited to exhibiting their samples and soliciting orders from prospective buyers, at prices and on terms fixed by appellant. The salesmen transmit the orders to appellant's office in St. Louis for acceptance or rejection, and when accepted the merchandise for filling the orders is shipped f. o. b. from points outside Washington to the purchasers within the state. All the merchandise shipped into Washington is invoiced at the place of shipment from which collections are made. No salesman has authority to enter into contracts or to make collections.

The Supreme Court of Washington was of opinion that the regular and systematic solicitation of orders in the state by appellant's salesmen, resulting in a continuous flow of appellant's product into the state, was sufficient to constitute doing business in the state so as to make appellant amenable to suit in its courts. But it was also of opinion that there were sufficient additional activities shown to bring the case within the rule frequently stated, that solicitation within a state by the agents of a foreign corporation plus some additional activities there are sufficient to render the corporation amenable to suit brought in the courts of the state to enforce an obligation arising out of its activities there. *International Harvester Co.* v. *Kentucky,* 234 U. S. 579, 587; *People's Tobacco Co.* v. *American Tobacco Co.,* 246 U. S. 79, 87; *Frene* v. *Louisville Cement Co.,* 77 U. S. App. D. C. 129, 134 F. 2d 511, 516. The court found such additional activities in the salesmen's display of samples sometimes in permanent display rooms, and the salesmen's residence within the state, continued over a period of years, all resulting in a

substantial volume of merchandise regularly shipped by appellant to purchasers within the state. The court also held that the statute as applied did not invade the constitutional power of Congress to regulate interstate commerce and did not impose a prohibited burden on such commerce.

Appellant's argument, renewed here, that the statute imposes an unconstitutional burden on interstate commerce need not detain us. For 53 Stat. 1391, 26 U. S. C. § 1606 (a) provides that "No person required under a State law to make payments to an unemployment fund shall be relieved from compliance therewith on the ground that he is engaged in interstate or foreign commerce, or that the State law does not distinguish between employees engaged in interstate or foreign commerce and those engaged in intrastate commerce." It is no longer debatable that Congress, in the exercise of the commerce power, may authorize the states, in specified ways, to regulate interstate commerce or impose burdens upon it. *Kentucky Whip & Collar Co.* v. *Illinois Central R. Co.,* 299 U. S. 334; *Perkins* v. *Pennsylvania,* 314 U. S. 586; *Standard Dredging Corp.* v. *Murphy,* 319 U. S. 306, 308; *Hooven & Allison Co.* v. *Evatt,* 324 U. S. 652, 679; *Southern Pacific Co.* v. *Arizona,* 325 U. S. 761, 769.

Appellant also insists that its activities within the state were not sufficient to manifest its "presence" there and that in its absence the state courts were without jurisdiction, that consequently it was a denial of due process for the state to subject appellant to suit. It refers to those cases in which it was said that the mere solicitation of orders for the purchase of goods within a state, to be accepted without the state and filled by shipment of the purchased goods interstate, does not render the corporation seller amenable to suit within the state. See *Green* v. *Chicago, B. & Q. R. Co.,* 205 U. S. 530, 533; *International Harvester Co.* v. *Kentucky, supra,* 586–587; *Philadelphia*

& *Reading R. Co.* v. *McKibbin,* 243 U. S. 264, 268; *People's Tobacco Co.* v. *American Tobacco Co., supra,* 87. And appellant further argues that since it was not present within the state, it is a denial of due process to subject it to taxation or other money exaction. It thus denies the power of the state to lay the tax or to subject appellant to a suit for its collection.

Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer* v. *Neff,* 95 U. S. 714, 733. But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Milliken* v. *Meyer,* 311 U. S. 457, 463. See Holmes, J., in *McDonald* v. *Mabee,* 243 U. S. 90, 91. Compare *Hoopeston Canning Co.* v. *Cullen,* 318 U. S. 313, 316, 319. See *Blackmer* v. *United States,* 284 U. S. 421; *Hess* v. *Pawloski,* 274 U. S. 352; *Young* v. *Masci,* 289 U. S. 253.

Since the corporate personality is a fiction, although a fiction intended to be acted upon as though it were a fact, *Klein* v. *Board of Supervisors,* 282 U. S. 19, 24, it is clear that unlike an individual its "presence" without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it. To say that the corporation is so far "present" there as to satisfy due process requirements, for purposes of taxation or the maintenance of suits against it in the courts of the state, is to beg the question to be decided. For the terms "present" or "presence" are

used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. L. Hand, J., in *Hutchinson* v. *Chase & Gilbert,* 45 F. 2d 139, 141. Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An "estimate of the inconveniences" which would result to the corporation from a trial away from its "home" or principal place of business is relevant in this connection. *Hutchinson* v. *Chase & Gilbert, supra,* 141.

"Presence" in the state in this sense has never been doubted when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given. *St. Clair* v. *Cox,* 106 U. S. 350, 355; *Connecticut Mutual Co.* v. *Spratley,* 172 U. S. 602, 610–611; *Pennsylvania Lumbermen's Ins. Co.* v. *Meyer,* 197 U. S. 407, 414–415; *Commercial Mutual Co.* v. *Davis,* 213 U. S. 245, 255–256; *International Harvester Co.* v. *Kentucky, supra;* cf. *St. Louis S. W. R. Co.* v. *Alexander,* 227 U. S. 218. Conversely it has been generally recognized that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there. *St. Clair* v. *Cox, supra,* 359, 360; *Old Wayne Life Assn.* v. *McDonough,* 204 U. S. 8, 21; *Frene* v. *Louisville Cement Co., supra,* 515, and cases cited. To require the corporation in such circumstances to defend the suit away from its home or other jurisdiction where it carries on more substantial activities has been thought to lay too great and unreasonable a burden on the corporation to comport with due process.

While it has been held, in cases on which appellant relies, that continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity, *Old Wayne Life Assn.* v. *McDonough, supra; Green* v. *Chicago, B. & Q. R. Co., supra; Simon* v. *Southern R. Co.,* 236 U. S. 115; *People's Tobacco Co.* v. *American Tobacco Co., supra;* cf. *Davis* v. *Farmers Co-operative Co.,* 262 U. S. 312, 317, there have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities. See *Missouri, K. & T. R. Co.* v. *Reynolds,* 255 U. S. 565; *Tauza* v. *Susquehanna Coal Co.,* 220 N. Y. 259, 115 N. E. 915; cf. *St. Louis S. W. R. Co.* v. *Alexander, supra.*

Finally, although the commission of some single or occasional acts of the corporate agent in a state sufficient to impose an obligation or liability on the corporation has not been thought to confer upon the state authority to enforce it, *Rosenberg Bros. & Co.* v. *Curtis Brown Co.,* 260 U. S. 516, other such acts, because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit. Cf. *Kane* v. *New Jersey,* 242 U. S. 160; *Hess* v. *Pawloski, supra; Young* v. *Masci, supra.* True, some of the decisions holding the corporation amenable to suit have been supported by resort to the legal fiction that it has given its consent to service and suit, consent being implied from its presence in the state through the acts of its authorized agents. *Lafayette Insurance Co.* v. *French,* 18 How. 404, 407; *St. Clair* v. *Cox, supra,* 356; *Commercial Mutual Co.* v. *Davis, supra,* 254; *Washington* v. *Superior Court,* 289 U. S. 361, 364–365. But more realistically it may be said that those authorized acts were of such a nature as to justify the fiction. *Smolik* v. *Philadelphia &*

*Reading Co.*, 222 F. 148, 151. Henderson, The Position of Foreign Corporations in American Constitutional Law, 94–95.

It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. *St. Louis S. W. R. Co.* v. *Alexander, supra,* 228; *International Harvester Co.* v. *Kentucky, supra,* 587. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. Cf. *Pennoyer* v. *Neff, supra; Minnesota Commercial Assn.* v. *Benn,* 261 U. S. 140.

But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. Compare *International Harvester Co.* v. *Kentucky, supra,* with *Green* v. *Chicago, B. & Q. R. Co., supra,* and *People's Tobacco Co.* v. *American Tobacco Co., supra.* Compare *Connecticut Mutual Co.* v. *Spratley, supra,* 619, 620 and *Commercial Mutual Co.* v. *Davis, supra,* with *Old Wayne Life Assn.* v. *McDonough, supra.* See 29 Columbia Law Review, 187–195.

Applying these standards, the activities carried on in behalf of appellant in the State of Washington were neither irregular nor casual. They were systematic and continuous throughout the years in question. They resulted in a large volume of interstate business, in the course of which appellant received the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights. The obligation which is here sued upon arose out of those very activities. It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our traditional conception of fair play and substantial justice, to permit the state to enforce the obligations which appellant has incurred there. Hence we cannot say that the maintenance of the present suit in the State of Washington involves an unreasonable or undue procedure.

We are likewise unable to conclude that the service of the process within the state upon an agent whose activities establish appellant's "presence" there was not sufficient notice of the suit, or that the suit was so unrelated to those activities as to make the agent an inappropriate vehicle for communicating the notice. It is enough that appellant has established such contacts with the state that the particular form of substituted service adopted there gives reasonable assurance that the notice will be actual. *Connecticut Mutual Co.* v. *Spratley, supra,* 618, 619; *Board of Trade* v. *Hammond Elevator Co.,* 198 U. S. 424, 437–438; *Commercial Mutual Co.* v. *Davis, supra,* 254–255. Cf. *Riverside Mills* v. *Menefee,* 237 U. S. 189, 194, 195; see *Knowles* v. *Gaslight & Coke Co.,* 19 Wall. 58, 61; *McDonald* v. *Mabee, supra; Milliken* v. *Meyer, supra.* Nor can we say that the mailing of the notice of suit to appellant by registered mail at its home office was not reasonably calculated to apprise appellant of the suit. Compare *Hess* v. *Pawloski, supra,* with *McDonald* v. *Mabee, supra,*

92, and *Wuchter* v. *Pizzutti*, 276 U. S. 13, 19, 24; cf. *Becquet* v. *MacCarthy*, 2 B. & Ad. 951; *Maubourquet* v. *Wyse*, 1 Ir. Rep. C. L. 471. See *Washington* v. *Superior Court*, *supra*, 365.

Only a word need be said of appellant's liability for the demanded contributions to the state unemployment fund. The Supreme Court of Washington, construing and applying the statute, has held that it imposes a tax on the privilege of employing appellant's salesmen within the state measured by a percentage of the wages, here the commissions payable to the salesmen. This construction we accept for purposes of determining the constitutional validity of the statute. The right to employ labor has been deemed an appropriate subject of taxation in this country and England, both before and since the adoption of the Constitution. *Steward Machine Co.* v. *Davis*, 301 U. S. 548, 579, *et seq.* And such a tax imposed upon the employer for unemployment benefits is within the constitutional power of the states. *Carmichael* v. *Southern Coal Co.*, 301 U. S. 495, 508, *et seq.*

Appellant having rendered itself amenable to suit upon obligations arising out of the activities of its salesmen in Washington, the state may maintain the present suit *in personam* to collect the tax laid upon the exercise of the privilege of employing appellant's salesmen within the state. For Washington has made one of those activities, which taken together establish appellant's "presence" there for purposes of suit, the taxable event by which the state brings appellant within the reach of its taxing power. The state thus has constitutional power to lay the tax and to subject appellant to a suit to recover it. The activities which establish its "presence" subject it alike to taxation by the state and to suit to recover the tax. *Equitable Life Society* v. *Pennsylvania*, 238 U. S. 143, 146; cf. *International Harvester Co.* v. *Department of Taxation*, 322 U. S. 435, 442, *et seq.; Hoopeston Canning Co.* v. *Cullen*,

*supra,* 316–319; see *General Trading Co.* v. *Tax Comm'n,* 322 U. S. 335.

*Affirmed.*

Mr. Justice Jackson took no part in the consideration or decision of this case.

Mr. Justice Black delivered the following opinion.

Congress, pursuant to its constitutional power to regulate commerce, has expressly provided that a State shall not be prohibited from levying the kind of unemployment compensation tax here challenged. 26 U. S. C. 1600. We have twice decided that this Congressional consent is an adequate answer to a claim that imposition of the tax violates the Commerce Clause. *Perkins* v. *Pennsylvania,* 314 U. S. 586, affirming 342 Pa. 529; *Standard Dredging Corp.* v. *Murphy,* 319 U. S. 306, 308. Two determinations by this Court of an issue so palpably without merit are sufficient. Consequently that part of this appeal which again seeks to raise the question seems so patently frivolous as to make the case a fit candidate for dismissal. *Fay* v. *Crozer,* 217 U. S. 455. Nor is the further ground advanced on this appeal, that the State of Washington has denied appellant due process of law, any less devoid of substance. It is my view, therefore, that we should dismiss the appeal as unsubstantial,[1] *Seaboard Air Line R. Co.* v. *Watson,* 287 U. S. 86, 90, 92, and decline the invitation to formulate broad rules as to the meaning of due process, which here would amount to deciding a constitutional question "in advance of the necessity for its decision." *Federation of Labor* v. *McAdory,* 325 U. S. 450, 461.

---

[1] This Court has on several occasions pointed out the undesirable consequences of a failure to dismiss frivolous appeals. *Salinger* v. *United States,* 272 U. S. 542, 544; *United Surety Co.* v. *American Fruit Product Co.,* 238 U. S. 140; *De Bearn* v. *Safe Deposit & Trust Co.,* 233 U. S. 24, 33–34.

Certainly appellant cannot in the light of our past decisions meritoriously claim that notice by registered mail and by personal service on its sales solicitors in Washington did not meet the requirements of procedural due process. And the due process clause is not brought in issue any more by appellant's further conceptualistic contention that Washington could not levy a tax or bring suit against the corporation because it did not honor that State with its mystical "presence." For it is unthinkable that the vague due process clause was ever intended to prohibit a State from regulating or taxing a business carried on within its boundaries simply because this is done by agents of a corporation organized and having its headquarters elsewhere. To read this into the due process clause would in fact result in depriving a State's citizens of due process by taking from the State the power to protect them in their business dealings within its boundaries with representatives of a foreign corporation. Nothing could be more irrational or more designed to defeat the function of our federative system of government. Certainly a State, at the very least, has power to tax and sue those dealing with its citizens within its boundaries, as we have held before. *Hoopeston Canning Co.* v. *Cullen,* 318 U. S. 313. Were the Court to follow this principle, it would provide a workable standard for cases where, as here, no other questions are involved. The Court has not chosen to do so, but instead has engaged in an unnecessary discussion in the course of which it has announced vague Constitutional criteria applied for the first time to the issue before us. It has thus introduced uncertain elements confusing the simple pattern and tending to curtail the exercise of State powers to an extent not justified by the Constitution.

The criteria adopted insofar as they can be identified read as follows: Due Process does permit State courts to "enforce the obligations which appellant has incurred" if

it be found "reasonable and just according to our traditional conception of fair play and substantial justice." And this in turn means that we will "permit" the State to act if upon "an 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business," we conclude that it is "reasonable" to subject it to suit in a State where it is doing business.

It is true that this Court did use the terms "fair play" and "substantial justice" in explaining the philosophy underlying the holding that it could not be "due process of law" to render a personal judgment against a defendant without notice and an opportunity to be heard. *Milliken* v. *Meyer,* 311 U. S. 457. In *McDonald* v. *Mabee,* 243 U. S. 90, 91, cited in the *Milliken* case, Mr. Justice Holmes, speaking for the Court, warned against judicial curtailment of this opportunity to be heard and referred to such a curtailment as a denial of "fair play," which even the common law would have deemed "contrary to natural justice." And previous cases had indicated that the ancient rule against judgments without notice had stemmed from "natural justice" concepts. These cases, while giving additional reasons why notice under particular circumstances is inadequate, did not mean thereby that all legislative enactments which this Court might deem to be contrary to natural justice ought to be held invalid under the due process clause. None of the cases purport to support or could support a holding that a State can tax and sue corporations only if its action comports with this Court's notions of "natural justice." I should have thought the Tenth Amendment settled that.

I believe that the Federal Constitution leaves to each State, without any "ifs" or "buts," a power to tax and to open the doors of its courts for its citizens to sue corporations whose agents do business in those States. Believing that the Constitution gave the States that power, I think it a judicial deprivation to condition its exercise upon this

Court's notion of "fair play," however appealing that term may be. Nor can I stretch the meaning of due process so far as to authorize this Court to deprive a State of the right to afford judicial protection to its citizens on the ground that it would be more "convenient" for the corporation to be sued somewhere else.

There is a strong emotional appeal in the words "fair play," "justice," and "reasonableness." But they were not chosen by those who wrote the original Constitution or the Fourteenth Amendment as a measuring rod for this Court to use in invalidating State or Federal laws passed by elected legislative representatives. No one, not even those who most feared a democratic government, ever formally proposed that courts should be given power to invalidate legislation under any such elastic standards. Express prohibitions against certain types of legislation are found in the Constitution, and under the long-settled practice, courts invalidate laws found to conflict with them. This requires interpretation, and interpretation, it is true, may result in extension of the Constitution's purpose. But that is no reason for reading the due process clause so as to restrict a State's power to tax and sue those whose activities affect persons and businesses within the State, provided proper service can be had. Superimposing the natural justice concept on the Constitution's specific prohibitions could operate as a drastic abridgment of democratic safeguards they embody, such as freedom of speech, press and religion,[2] and the right to counsel. This

---

[2] These First Amendment liberties—freedom of speech, press and religion—provide a graphic illustration of the potential restrictive capacity of a rule under which they are protected at a particular time only because the Court, as then constituted, believes them to be a requirement of fundamental justice. Consequently, under the same rule, another Court, with a different belief as to fundamental justice, could, at least as against State action, completely or partially withdraw Constitutional protection from these basic freedoms, just as though the First Amendment had never been written.

has already happened. *Betts* v. *Brady,* 316 U. S. 455. Compare *Feldman* v. *United States,* 322 U. S. 487, 494–503. For application of this natural law concept, whether under the terms "reasonableness," "justice," or "fair play," makes judges the supreme arbiters of the country's laws and practices. *Polk Co.* v. *Glover,* 305 U. S. 5, 17–18; *Federal Power Commission* v. *Natural Gas Pipeline Co.,* 315 U. S. 575, 600, n. 4. This result, I believe, alters the form of government our Constitution provides. I cannot agree.

True, the State's power is here upheld. But the rule announced means that tomorrow's judgment may strike down a State or Federal enactment on the ground that it does not conform to this Court's idea of natural justice. I therefore find myself moved by the same fears that caused Mr. Justice Holmes to say in 1930:

"I have not yet adequately expressed the more than anxiety that I feel at the ever increasing scope given to the Fourteenth Amendment in cutting down what I believe to be the constitutional rights of the States. As the decisions now stand, I see hardly any limit but the sky to the invalidating of those rights if they happen to strike a majority of this Court as for any reason undesirable." *Baldwin* v. *Missouri,* 281 U. S. 586, 595.