## OMNISOURCE CORPORATION,
**Appellant (Plaintiff Below),**

v.

## FORTUNE TRADING COMPANY, INC.,
**Appellee (Defendant Below).**

**No. 02A04–8804–CV–121.**

Court of Appeals of Indiana,
Fourth District.

April 26, 1989.

John F. Lyons, Barrett & McNagny, Fort Wayne, for appellant.

CHEZEM, Judge.

### Statement of Case

Appellant/OmniSource appeals from a judgment in favor of appellee/Fortune dismissing appellant's complaint for lack of personal jurisdiction over appellee.

We reverse.[1]

### Issue

Whether the trial court erred when granting the motion to dismiss for lack of personal jurisdiction over appellee.

### Facts

Sometime prior to February, 1986, appellee, Fortune Trading Company, Inc. (hereinafter, Fortune) owned and operated a wire reclamation business and scrap processing facility in Indiana. A representative of Fortune met with a representative of OmniSource Corporation (hereinafter, OmniSource), in Indiana and had several telephone conversations regarding various transactions for scrap metal, prior to February, 1986.

On February 5, 1986, Fortune made the initial telephone call regarding the currently disputed transaction, soliciting OmniSource to sell scrap metal to Fortune. At this time, OmniSource was in Indiana, but Fortune no longer owned the wire reclamation and scrap processing facility in Indiana. Fortune, a Maryland corporation had its principal place of business in Rockville, Maryland. OmniSource, an Indiana corporation had its principal place of business in Fort Wayne.

After Fortune's initial telephone call, a series of telephone calls occurred between Fortune and OmniSource regarding this disputed transaction, culminating in an oral agreement which was later reduced to writing.

---

**1.** This case was not assigned to the writing judge until March 10, 1989.

The disputed transaction involved scrap wire owned by OmniSource that Fortune bought and transported out of the country. All of the scrap that Fortune arranged to buy from OmniSource was located outside of Indiana. OmniSource directed Fortune to take the scrap from the out-of-state locations, knowing that Fortune intended to transport the scrap to Japan and Taiwan to sell to prearranged buyers. The only Fortune representative to contact OmniSource regarding this transaction was never in Indiana during the relevant time.

This dispute began when, after the scrap was delivered to Japan and Taiwan, it was rejected by the buyers for alleged failure to conform to certain previously agreed specifications. Fortune then refused to pay OmniSource the agreed price. On November 26, 1986, OmniSource filed a complaint against Fortune asking for judgment against Fortune for $34,272.45.

On December 29, 1986, Fortune answered raising three defenses, one of which was that Indiana lacked personal jurisdiction over Fortune. In the same pleading, Fortune counterclaimed for breach of contract, asking $60,787.58 in damages and dismissal of all claims with prejudice. July 24, 1987, Fortune filed a Motion to Dismiss for lack of personal jurisdiction. A hearing was held on December 14, 1987 where the trial court granted the Motion to Dismiss, without prejudice. OmniSource filed a Motion to Correct Errors on February 11, 1988, which was denied by the trial court on March 11, 1988.

### Discussion

OmniSource contends that the trial court erred by granting Fortune's Motion to Dismiss for lack of personal jurisdiction. In deciding whether or not Indiana should exercise personal jurisdiction over a foreign corporation we are guided by *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 477, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528.

First, one must determine whether "minimum contacts" within a forum have been established. In doing that, one must consider "these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King, supra,* 471 U.S. at 479, 105 S.Ct. at 2185. Then, "once it has been decided that a defendant purposefully established minimum contacts within the forum state, these contacts may be considered in the light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King, supra,* 471 U.S. at 476, 105 S.Ct. at 2184, quoting *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95.

Indiana's standard for deciding whether personal jurisdiction is appropriate is set out in *Woodmar Coin Center, Inc. v. Owen* (1983), Ind.App., 447 N.E.2d 618, 621:

> To exercise jurisdiction consonant with due process over a non-resident defendant, "certain minimum contacts" must exist between the non-resident defendant and the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 quoting *Milliken v. Meyer* (1940), 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278.

.    .    .    .    .

> At a minimum, the court must find "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283.

.    .    .    .    .

> The factors to be considered in determining whether fair play and substantial justice standards have been met may be summarized as follows: (1) The nature and quality of the contacts with the forum state; (2) the quantity of contacts with the state; (3) the relationship between those contacts and the cause of action; (4) the interest of the forum state in providing a forum for its residents;

and (5) the convenience of the parties. *See Aftanase v. Economy Baler Co.* (8th Cir.1965) 343 F.2d 187, 197.

In *Woodmar*, this court upheld jurisdiction over an out-of-state defendant who called an Indiana Corporation (the plaintiff) regarding coins advertised for sale in the Wall Street Journal. The court held that certain alleged factors established sufficient minimum contacts: the out-of-state defendant made the initial telephone calls regarding the transaction and substantial ensuing telephone negotiations were made between the parties. A contract was ultimately created. These same factors exist in the case at bar: Fortune made the initial telephone call to OmniSource soliciting business; several ensuing telephone negotiations occurred; and a written contract consumated the transaction.

Analysing *Woodmar* and *Burger King* in light of the facts of this case, we find that the contacts initiated by Fortune and Fortune's prior business dealings are sufficient for Indiana to exercise jurisdiction over Fortune without any unfairness or surprise to Fortune.

Fortune purposefully availed itself of the benefits and responsibilities of doing business in Indiana by soliciting, negotiating, and forming a contract with an Indiana resident and by maintaining a business relationship over a significant period of time.

The trial court erred by granting Fortune's Motion to Dismiss for lack of personal jurisdiction.

Reversed.

CONOVER, P.J., and GARRARD, J. concur.