BASEBALL CARD WORLD, INC.,
Appellant–Plaintiff,

v.

Jerry PANNETTE and J's Baseball
Cards, Appellees–Defendants.

No. 48A04–9103–CV–87.

Court of Appeals of Indiana,
Third District.

Dec. 30, 1991.

---

⊶12(2.5)

Samuel C. Hasler, Anderson, for appellant-plaintiff.

Theodore F. Smith, Jr., Smith & Farrell, P.C., Anderson, for appellees-defendants.

HOFFMAN, Judge.

Plaintiff-appellant Baseball Card World, Inc. (Baseball) appeals the dismissal of its complaint against defendants-appellees Jerry Pannette and J's Baseball Cards (collectively Pannette). The trial court determined that it lacked personal jurisdiction over Pannette.

The facts relevant to the appeal disclose that Baseball is an Indiana corporation located in Anderson, Indiana, which manufactures and distributes sports cards to retailers. Pannette acts as agent and adviser for his teenage sons' business located in Dubois, Pennsylvania, which buys, sells and trades baseball cards and hobby supplies. In 1989, Pannette and his sons attended a national convention for baseball card exhibitors held in Chicago, Illinois. Baseball maintained an exhibition booth at the convention.

A representative of Baseball offered to visit Pannette in Pennsylvania. In July 1989, a representative of Baseball traveled to Dubois. A one-year distributorship agreement was executed in Dubois whereby Baseball would supply products to Pannette. Between July 1989 and November 1989, Pannette placed orders for goods by telephoning Baseball. Pannette placed orders once or twice a week during the time period.

In November, two of Pannette's checks to Baseball were returned because of insufficient funds. Pannette eventually stopped placing orders with Baseball. Baseball sued Pannette in Indiana for treble damages for each of the returned checks and for a breach of contract.

Baseball's motion for summary judgment was denied. However, the trial court granted Pannette's motion to dismiss finding that it lacked personal jurisdiction over Pannette. This appeal ensued.

As consolidated, the issue presented on review is whether sufficient minimum contacts exist under Indiana's "Long Arm" statute, Ind. Trial Rule 4.4(A), to find that Pannette has submitted to personal jurisdiction in Indiana.

■ A party challenging jurisdiction must establish the challenge by a preponderance of the evidence unless lack of jurisdiction is apparent on the face of the complaint. *Alberts v. Mack Trucks, Inc.* (1989), Ind.App., 540 N.E.2d 1268, 1270. Because jurisdiction is presumed in Indiana and need not be alleged in the complaint, the plaintiff's burden to come forward with evidence which would establish jurisdiction does not arise until a challenge by the defendant. *Id.*

Trial Rule 4.4(A) includes provisions for finding that nonresidents have submitted to the jurisdiction of Indiana courts. The rule states in pertinent part:

"Acts Serving as a Basis for Jurisdiction. Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(1) doing any business in this state."[1]

T.R. 4.4(A)(1).

■ Due process requires that the defendant have certain minimum contacts with the forum state such that maintenance of the suit will not offend the traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. Minimum contacts are required to assure that the defendant has purposefully availed itself of the jurisdiction of the forum state. *Hanson v. Denckla* (1958), 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

This Court outlined the factors to be considered when determining whether fair play and substantial justice would be served by a finding that the defendant has subjected itself to the jurisdiction of the courts of the forum state:

"(1) The nature and quality of the contacts with the forum state; (2) the quantity of contacts with the state; (3) the relationship between those contacts and the cause of action; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.... The first three are the primary factors in determining whether *International Shoe* standards are met. [Citation omitted.]"

*Tietloff v. Lift–A–Loft Corp.* (1982), Ind. App., 441 N.E.2d 986, 989.

■ Baseball contends that it met its burden of establishing jurisdiction because Pannette knew he was doing business with an Indiana company, telephoned Baseball in Anderson once or twice per week for approximately five months, and mailed checks to Indiana. However, Baseball concedes that, unlike most cases in which jurisdiction has been found, in the present case the parties did not commence their relationship in Indiana; Pannette has not personally appeared or resided in Indiana; the contract which forms the basis for the suit was not executed in Indiana; no contract negotiations occurred in Indiana; and Pannette does not maintain any offices or other businesses in Indiana. Pannette's sole contact with Indiana consists of periodic telephone communications to place orders with Baseball.

While Baseball offers a compelling argument that current technology including computers, facsimile machines and telephonic links allows wide-ranging business contacts absent personal contact, the present case does not bear the minimum contacts required so as not to offend " 'traditional notions of fair play and substantial justice.' " *See Tietloff, supra,* 441 N.E.2d at 989 (Citations omitted.).[2] The contact in

---

1. Baseball makes an alternative argument under T.R. 4.4(A)(2) and T.R. 4.4(A)(3); however, those provisions are inapplicable. Baseball's alternative argument is aimed at showing that Pannette's business contacts establish jurisdiction.

2. Baseball's argument that Pannette's telephone calls alone should establish sufficient contacts is based upon *Woodmar Coin Center, Inc. v. Owen* (1983), Ind.App., 447 N.E.2d 618. Although on appeal it was determined that the negotiations and telephone conversations provided a basis for personal jurisdiction, this Court found that any error was harmless inasmuch as the statute of frauds would preclude recovery by the plaintiff. *Id.* at 620–622. Thus, the commentary in *Woodmar* regarding jurisdiction is *obiter dicta.* Further, Baseball tacitly acknowledges that under the *Woodmar* analysis, the contacts here are even more tenuous. As noted previously, Pan-

the present case is similar to that by consumers who place orders for goods from the state in which they reside to national and international businesses. To find that a consumer has submitted to personal jurisdiction in a foreign state or country based upon an order for goods strains the boundaries of the minimum contacts requirement.

Accordingly, the trial court's judgment dismissing the action for a lack of personal jurisdiction is affirmed.

Affirmed.

CHEZEM, J., concurs with opinion.

MILLER, J., dissents with opinion.

CHEZEM, Judge, concurring.

I concur with the majority and consider the result reached here as consistent with my position in *Omnisource Corp. v. Fortune Trading Co.* (1989), Ind.App., 537 N.E.2d 43.

Although the specific transaction in *Omnisource* is similar to the facts in the case at hand, the business dealings of the parties are dissimilar. Omnisource and Fortune Trading had a history of doing business, and at one time, Fortune Trading was located in Indiana. Considering the prior negotiations of the parties, I find the exercise of jurisdiction over Fortune Trading to be within the bounds of fair play.

Conversely, the negotiations between Baseball and Pannette were conducted outside of Indiana. Baseball even went to the Pannettes' home to negotiate their agreement.

Accordingly, I concur.

nette did not contact Baseball in Indiana, and the contract was not negotiated or executed in Indiana. The decision in *Woodmar* does not support a finding of personal jurisdiction under the circumstances of the instant matter.

3. The court's order stated:

"Comes now the Court and having previously taken this matter under advisement, hereby sustains Defendant's Motion for Summary Judgment, finding that this Court lacks personal jurisdiction over the Defendant."

MILLER, Judge, dissenting.

I respectfully dissent. Although Pannette's representatives were never physically in Indiana, its activities constituted "doing any business" in Indiana under Indiana Trial Rule 4.4(A); therefore, the Madison court could exercise personal jurisdiction over Pannette.[3] I would reverse and remand for further proceedings.

Baseball argues that it met its burden to present evidence to establish jurisdiction in that Pannette 1) knew it was doing business with an Indiana company; 2) telephoned Baseball in Anderson once or twice a week for about five months; and 3) mailed checks to Indiana. The majority finds this evidence insufficient to establish jurisdiction. I disagree.

Trial Rule 4.4(A), Indiana's "Long Arm" statute, provides that a nonresident may be submitted to the jurisdiction of Indiana courts if certain conditions are met. In particular, T.R. 4.4(A)(1), which is at issue here, provides:

"(A) Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(1) doing any business in this state

This long-arm statute is " 'intended to extend personal jurisdiction of courts sitting in this state ... to the limits permitted under the due process clause of the fourteenth amendment.' " *Suyemasa v. Myers* (1981), Ind.App., 420 N.E.2d 1334, 1340, quoting *Oddi v. Mariner–Denver, Inc.* (S.D.Ind.1978), 461 F.Supp. 306, 308.

Although the trial court phrased his order in terms of granting Pannette motion for *summary judgment,* we note that the proper mechanism for dismissal for want of personal jurisdiction is provided in a motion to dismiss under Indiana Trial Rule 12(B)(2). A motion to dismiss under 12(B)(2) is not converted into a motion for summary judgment when the trial court hears evidence on the motion. *See Mid–States Aircraft Engines, Inc. v. Mize Co., Inc.* (1984), Ind. App., 467 N.E.2d 1242; 1 W. Harvey, Indiana Practice § 12.6(B)(2), at 604 (1987).

Due process requires that 1) the defendant have certain minimum contacts with the forum state such that maintenance of the suit will not offend the traditional notions of fair play and substantial justice; *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; and 2) there be provided a method of notice reasonably calculated to afford the defendant actual notice and thus an opportunity to be heard. *Milosavljevic v. Brooks*, (N.D.Ind.1972), 55 F.R.D. 543. Minimum contacts are required to assure that the defendant has purposefully availed itself to the jurisdiction of the forum state. *Hanson v. Denckla* (1958), 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. This "purposeful availment" requirement was outlined by the Supreme Court in *Hanson* as follows:

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws."

*Id.* at 253, 78 S.Ct. at 1239–40.

With these due process requirements in mind, this court outlined the following factors to be considered in determining whether a defendant may be subjected to the jurisdiction of the courts of this state:

"(1) The nature and quality of the contacts with the forum state;

"(2) the quantity of contacts with the state;

"(3) the relationship between those contacts and the cause of action;

"(4) the interest of the forum state in providing a forum for its residents; and

"(5) the convenience of the parties.

"The first three are the primary factors in determining whether *International Shoe* standards are met."

*Tietloff v. Lift–A–Loft Corp.* (1982), Ind. App., 441 N.E.2d 986, 989.

Here, neither Pannette nor any other representative from J's came to Indiana. Rather, Pannette initially met with a Baseball representative in Illinois, where both Baseball and Pannette had gone to solicit business. Baseball's booth at the convention contained the words "Anderson, Indiana" underneath the Baseball logo. Contract negotiations and execution were carried out in Pennsylvania. Pannette telephoned Baseball's office in Anderson once or twice a week from mid July to November of 1989, and purchased $8,000 or more in merchandise during each contact from July through November, 1989.

In examining these facts with relationship to the above factors, it can be said that Pannette had a number of contacts—at least one and sometimes two times a week—with Baseball during the five month period between July and November. All of these contacts were to carry out substantial business between Pannette and Baseball. Further, this action arose directly out of those contacts—Baseball alleges that Pannette wrote bad checks to pay for the merchandise it ordered and that it breached the contract by failing to place minimum orders as required by the contract. Also, Indiana has an interest in providing a forum for its residents, especially with regard to the bad check allegation as evidenced by a statute which would permit Baseball to collect treble damages if it could prevail on its claim that Pannette committed conversion by writing bad checks. *See* Ind.Code 34–4–31–1(1). Finally, the "inconvenience factor" is of little importance here. It would be just as inconvenient for Baseball to go to Pennsylvania to litigate this matter as it is for Pannette to come to Indiana. Moreover, in *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528, the Supreme Court held that jurisdiction "may not be avoided merely because the defendant did not physically enter the forum State". *Id.* at 476, 105 S.Ct. at 2184.

In *Woodmar Coin Center, Inc. v. Owen* (1983), Ind.App., 447 N.E.2d 618, this court indicated that Indiana courts could properly exercise jurisdiction over an out-of-state de-

fendant even though he—like Pannette—had never physically entered Indiana. Owen, a resident of Texas, phoned Woodmar, an Indiana corporation, in response to its advertisement in the Wall Street Journal for silver coins Woodmar had for sale. The parties conducted substantial negotiations over price, the method by which Owen was to inspect the coins, and the manner of payment during several telephone calls, which both Woodmar and Owen initiated. As agreed, Woodmar sent the coins to Owen's bank in Texas for inspection. Owen decided the coins were not satisfactory and sent them back to Woodmar. Woodmar sued Owen in Indiana for breach of contract. The trial court entered summary judgment in favor of Owen, finding no personal jurisdiction over Owen. On appeal, Woodmar argued that three key facts established sufficient minimum contacts to permit the Indiana court to exercise personal jurisdiction over Owen: 1) Owen's two phone calls which initiated the relationship between Woodmar and Owen; 2) the substantial negotiations conducted between the parties; and 3) the contract entered into by the parties. After reciting the factors outlined in *Tietloff,* we stated:

> "Owen purposely availed himself of the benefits and responsibilities of doing business in this State by soliciting, negotiating and forming a contract with an Indiana resident. The trial court erred by entering summary judgment on this issue."

*Woodmar Coin Center, supra,* 447 N.E.2d at 621. Our reasoning in *Woodmar,* though *dicta,* is consistent with the Supreme Court's ruling in *Burger King, supra*—a defendant need not enter this state before our courts may exercise personal jurisdiction over him.

I cannot agree with the majority that Pannette's contact with Indiana "is similar to that by consumers who place orders for goods from the state in which they reside to national and international businesses." Maj. op. at 756. J's had a contract with Baseball which obligated it to place regu-

lar, minimum orders with Baseball. Baseball, in turn, was obligated by the contract to fill those orders. Thus, the contact between Pannette and Baseball (and Indiana) was more than that of a consumer who places a random order with a foreign company with no obligation to continue to place those orders and with no obligation on the part of the company to fill those orders.

For the foregoing reasons, I would hold that Pannette had sufficient contact with this state so as to be subject to the jurisdiction of Indiana's courts. I would reverse the trial court's dismissal.