**Alan S. FREEMOND and Clarajohn H. Freemond, Appellants–Plaintiffs,**

**v.**

**Charles A. SOMMA, Jr., Alexander B. McMurtrie, Jr., Margaret H. McMurtrie, Somma & McMurtrie, P.C., a Virginia Professional Corporation, and George M. Hillenbrand, II, Appellees–Defendants.**

**No. 24A01–9205–CV–123.**

Court of Appeals of Indiana,
First District.

April 6, 1993.

Rehearing Denied June 11, 1993.

Thomas E. Atz, Samper, Hawkins, Atz & Cook, Indianapolis, Daniel A. Gecker, Maloney, Yeatts & Barr, Richmond, VA, for appellants-plaintiffs.

Michael R. Hartman, Karl L. Mulvaney, Nana Quay–Smith, Bingham, Summers, Welsh & Spilman, Indianapolis, for appellees-defendants.

BAKER, Judge.

Plaintiff-appellants Alan S. and Clarajohn H. Freemond (the Freemonds) appeal the dismissal of their action against defendant-appellees Charles A. Somma, Jr., Alexander B. McMurtrie, Jr., Margaret H. McMurtrie, Somma & McMurtrie, P.C., a Virginia Professional Corporation (collectively, the "nonresident defendants"), and George M. Hillenbrand, II. The Franklin Circuit Court dismissed the action against the nonresident defendants [1] after concluding it did not have personal jurisdiction and Virginia was a more convenient forum to resolve the litigation.

The Freemonds raise two issues for our review, which we restate as:

I. Whether the trial court erred when it dismissed the complaint for lack of personal jurisdiction.

II. Whether the trial court erred when it concluded Virginia was a more convenient forum to resolve the litigation.

### FACTS

The Freemonds initiated this action against the nonresident defendants and Hillenbrand in the Franklin Circuit Court on December 6, 1990, following an investment deal gone bad. Although the Freemonds reside in Indiana, their complaint sought compensatory and punitive damages for a variety of alleged acts or omissions regarding the creation, management, and dissolution of a limited partnership in Virginia known as the Williamsburg Suites, Ltd. The Freemonds apparently lost a great deal of money on the partnership's primary business venture, a hotel in Williamsburg, Virginia.

With the exception of Hillenbrand, who resides in Indiana, all of the named defendants are Virginia residents or, in the case of Somma & McMurtrie, P.C., a Virginia professional corporation engaged in the practice of law in Virginia. After being served with the Freemonds' complaint, the nonresident defendants filed a motion to dismiss in which they challenged Indiana's personal jurisdiction and, in the alternative, argued Virginia was a more convenient forum for the litigation. Both sides produced numerous affidavits and extensive deposition testimony describing the nonresident defendants' contacts with Indiana.

The record reveals the nonresident defendants first solicited the Freemonds' participation in the limited partnership by forwarding information about the project to the Freemonds' Indiana home in November

---

1. The complaint against Hillenbrand, an Indiana resident, was not dismissed and is not in dispute here.

1985. That same year, the McMurtries spent Christmas with the Freemonds at a family gathering in Indiana,[2] at which time the limited partnership was discussed. The nonresident defendants sent the limited partnership agreement to the Freemonds' Indiana address, and the Freemonds executed the agreement in Indiana sometime after January 17, 1986. Within one month of signing the agreement, the Freemonds and the nonresident defendants again gathered in Indiana, at which time they discussed the partners' exposure and financing. Thereafter, the nonresident defendants continued to communicate with the Freemonds in Indiana about Williamsburg Suites, Ltd., both through written correspondence and telephonically.

The Williamsburg Suites hotel was not a financial success. Despite attempts to save the business, the limited partnership was unable to meet its financial obligations. Eventually, the Freemonds filed this action in Indiana for events connected to the failed partnership. Through a motion to dismiss, the nonresident defendants challenged Indiana's personal jurisdiction and the convenience of the forum. The trial court agreed with both challenges, and dismissed the action. The Freemonds now appeal the dismissal.

## DISCUSSION AND DECISION

### I

#### Personal Jurisdiction

##### (a) Standard of Review

■ It is axiomatic that an Indiana court must have personal jurisdiction over a defendant in order to render a valid personal judgment against that defendant. *Ryan v. Chayes Virginia* (1990), Ind.App., 553 N.E.2d 1237, 1239, *trans. denied.* A party challenging the court's personal jurisdiction must prove its challenge by a preponderance of the evidence unless lack of jurisdiction is apparent on the face of the complaint. *Mid–States Aircraft Engines v. Mize Co.* (1984), Ind.App., 467 N.E.2d

1242, 1247. We have said the decision to grant a motion to dismiss based on lack of *in personam* jurisdiction lies within the trial court's sound discretion. *Ryan, supra,* at 1239. As with any fact-finding entrusted to the trial court, it is within the trial court's sound discretion to decide the jurisdictional facts. Once the court has decided those facts, however, whether *in personam* jurisdiction exists is a question of law.

##### (b) Due Process Considerations

In this case, the Freemonds challenge the trial court's conclusion it did not have personal jurisdiction over the nonresident defendants.

Ind.Trial Rule 4.4, Indiana's "long-arm" statute, provides, in relevant part:

(A) Acts serving as a basis for jurisdiction. Any person or organization that is a nonresident of this state ... submits to the jurisdiction of [Indiana] courts as to any action arising from the following acts committed by him or his agent:

(1) Doing business in this state;

(2) Causing personal injury or property damage by an act or omission done within this state;

(3) Causing personal injury or property damage in this state by an occurrence, act or omission done outside this state if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue or benefit from goods, materials, or services used, consumed, or rendered in this state;

(4) Having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in the state;

(5) Owning, using, or possessing any real property or an interest in real property within this state;

(6) Contracting to insure or act as surety for or on behalf of any person,

---

**2.** Plaintiff Clarajohn H. Freemond and defendants Margaret H. McMurtrie and George Hillenbrand, II, are siblings.

property, or risk located within this state at the time the contract was made[.]

▮ The purpose of T.R. 4.4(A) is to extend jurisdiction to the boundaries permitted by the due process clause of the 14th Amendment to the United States Constitution. *Fetner v. Maury Boyd & Assoc., Inc.* (1990), Ind.App., 563 N.E.2d 1334, 1336, *trans. denied.* The Supreme Court has interpreted due process as requiring certain "minimum contacts" between the defendant and the state before jurisdiction may be exercised. *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. The defendant's contacts with the forum state must be such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Id.* at 316, 66 S.Ct. at 158, 90 L.Ed. at 102 (citations omitted).

▮ A mechanical or quantitative evaluation of a defendant's activities in a state cannot resolve the question of the reasonableness of the exercise of personal jurisdiction. Whether exercising personal jurisdiction is reasonable depends upon the quality and nature of the defendant's activity in relation to the matter under litigation. The critical inquiry is whether the defendant's conduct and connection with the forum are such that the defendant should reasonably anticipate being hauled into the distant forum court. *World–Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498. At a minimum, the court must find "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298. The "purposeful availment" requirement ensures that a defendant will not be hauled into a jurisdiction solely on the basis of "random, fortuitous or attenuated contacts or the unilateral activity of another party or a third person who claims some relationship with him." *Burger King v. Rudzewicz* (1985), 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542 (citations omitted).

The focus is on the defendant's activities within the forum state, not on the plaintiff's activities. *World–Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501.

The Freemonds argue that pursuant to T.R. 4.4(A)(1), the trial court had jurisdiction over the nonresident defendants because the nonresident defendants were doing business in Indiana. Specifically, they allege the nonresident defendants had the following summarized relevant "minimum contacts" with the State of Indiana:

(1) The McMurtries first solicited the Freemonds' participation in Williamsburg Suites in November 1985, when they forwarded information about the project to the Freemonds' home in Indiana;

(2) In December 1985, the Freemonds and the McMurtries discussed Williamsburg Suites at an annual family Christmas gathering in Indiana at which time the final decision to proceed with the Williamsburg Suites was made;

(3) After the Freemonds and McMurtries reached an oral agreement in Indiana, and while McMurtrie was still in Indiana, McMurtrie telephoned Somma in Virginia and instructed him to finalize the limited partnership agreement and related documents;

(4) Somma and McMurtrie forwarded the Williamsburg Suites Partnership Agreement to Dr. Freemond in Indiana, and Dr. Freemond executed the document in Indiana on or around January 17, 1986;

(5) In February 1986, the McMurtries, Somma, and the Freemonds met in Indiana and discussed the Williamsburg Suites project, including its financing and the partners' liability;

(6) The Williamsburg Suites project was financed through the purchase of industrial revenue bonds, and Somma and McMurtrie forwarded all bond documents to Indiana for the Freemonds' signatures;

(7) In August 1986, Margaret McMurtrie telephoned Clarajohn Freemond in Indiana to secure additional collateral for the bonds;

(8) Somma and McMurtrie forwarded the "Guaranty of Operating Deficits" to the Freemonds in Indiana, and the Freemonds executed the Guaranty in Indiana;

(9) While the hotel project was in operation, Somma and McMurtrie mailed capital calls and requisitions to Dr. Freemond in Indiana;

(10) After the partnership was created, Somma and McMurtrie regularly and frequently contacted the Freemonds in Indiana by telephone to discuss the project. Somma and McMurtrie also forwarded in excess of 150 letters and documents regarding partnership business to the Freemonds' Indiana address.

*See Appellants' Reply Brief* at 2–6.

The nonresident defendants respond to the Freemonds' list of "minimum contacts" with two types of arguments. First, they contend the Freemonds rely on several activities that are completely irrelevant to establishing *in personam* jurisdiction. Those activities include mailing various documents to the Freemonds in Indiana, calling the Freemonds in Indiana, and the Freemonds' own unilateral activities in Indiana, including deciding to go ahead with the limited partnership and executing documents. Second, the nonresident defendants question the importance of the two meetings that took place in Indiana. At the December 1985 meeting, for example, the defendants argue they neither negotiated nor executed the partnership agreement, they simply "discussed" the partnership. Similarly, they argue the February 1986 meeting has no bearing on the subject matter of the Freemonds' litigation because the limited partnership was already created when the meeting took place. We are unpersuaded by the nonresident defendants' arguments.

The issue of whether contract negotiations and general business relationships conducted in the forum state constitute minimum contacts sufficient to create personal jurisdiction is not new. Several federal courts have found that substantial negotiations conducted in the forum state are sufficient to create personal jurisdiction. *See Thompson v. Ecological Science Corp.* (8th Cir.1970), 421 F.2d 467; *Liquid Carriers Corp. v. American Marine Corp.* (2d Cir.1967), 375 F.2d 951; *Tatham–Laird & Kudner, Inc. v. Johnny's American Inn, Inc.* (N.D.Ill.1974), 383 F.Supp. 28. Similarly, federal courts have concluded personal jurisdiction can be created by purposefully acting within the state both before and after executing a contract. *See National Gas Appliance v. A.B. Electrolux* (7th Cir. 1959), 270 F.2d 472, *cert. denied,* 361 U.S. 959, 80 S.Ct. 584, 4 L.Ed.2d 542; *Unidex Systems Corp. v. Butz Engineering Corp.* (D.D.C.1976), 406 F.Supp. 899.

This court has also found personal jurisdiction based upon a nonresident defendant's business negotiations conducted within this state. In *Suyemasa v. Myers* (1981), Ind.App., 420 N.E.2d 1334, for example, Myers, a Tennessee resident, discussed the sale of stock and negotiated the sales contract with Indiana buyers while he was physically present in Indiana. We concluded these activities were sufficient to subject Myers to personal jurisdiction here. Similarly, in *Tietloff v. Lift–A–Loft Corp.* (1982), Ind.App., 441 N.E.2d 986, we concluded Arkansas properly exercised jurisdiction over Indiana defendant Lift–A–Loft in a dispute over a fork lift. The evidence revealed that on at least two occasions, Lift–A–Loft entered the state of Arkansas to negotiate the underlying contract, examined the fork lift while it was in Arkansas, directed correspondence to Tietloff in Arkansas, and hauled the fork lift from Arkansas to Indiana.

Cases in which we have found no personal jurisdiction are also instructive. In *Harold Howard Farms v. Hoffman* (1992), Ind.App., 585 N.E.2d 18, for example, we concluded Indiana did not have personal jurisdiction over a Michigan horse breeder when the breeder's only contact with Indiana included an advertisement that reached an Indiana resident, service as a judge at three horse shows within two years, and telephone calls directed to Indiana.

Neither did we find personal jurisdiction in *Baseball Card World, Inc. v. Pannette* (1991), Ind.App., 583 N.E.2d 753, *trans.*

*denied,* where Baseball Card World's only contact with Indiana included telephone calls to Indiana once or twice a week for five months, and mailing checks to Indiana. The evidence showed the business relationship did not commence in Indiana, the sales contract was not negotiated or executed in Indiana, and Baseball Card World's agent never personally appeared in Indiana.

Similarly, this court declined to find personal jurisdiction over Dura–Line, a Kentucky corporation, in *Dura–Line Corp. v. Sloan* (1986), Ind.App., 487 N.E.2d 469. In that case, an Indiana resident telephoned Dura–Line from Indiana in an effort to solicit a commission agreement for selling Dura–Line products in Minnesota. Dura–Line did not initiate the business agreement, and it never traveled to Indiana for negotiations. Its only activity directed towards Indiana included follow-up mailings and telephone calls.

■ In this case, it is clear the nonresident defendants discussed, solicited, negotiated, made offers, and entered agreements regarding Williamsburg Suites, Ltd. through written and telephonic correspondence directed to Indiana. Furthermore, the nonresident defendants were in Indiana on at least two occasions when discussions and negotiations took place. The first occasion was in December of 1985 before the limited partnership agreement was executed, and the second was in February of 1986 after the partnership was created but while the parties were still discussing financing and partner liability.

Asserting personal jurisdiction over the nonresident defendants under these facts does not offend notions of due process. We do not predicate personal jurisdiction on the Freemonds' unilateral activity, but on the nonresident defendants' purposeful conduct either in, or directed to, Indiana. *See Suyemasa, supra; Tietloff, supra.* The trial court erred when it concluded the nonresident defendants' contacts were in-

sufficient to create personal jurisdiction. Dismissal of the Freemonds' action was nonetheless proper, however, in light of our determination that Virginia is a more convenient forum for this litigation.[3]

## II

### *Forum Non Conveniens*

■ The Freemonds challenge the trial court's grant of the defendants' motion to dismiss based on the conclusion that Virginia is a more convenient forum than Indiana to resolve the litigation.

■ The determination of whether to dismiss an action on the basis of *forum non conveniens* is vested within the trial court's sound discretion. *Killearn Properties, Inc. v. Lambright* (1978), 176 Ind.App. 684, 687, 377 N.E.2d 417, 419. To prevail on appeal, the Freemonds must demonstrate the trial court abused that discretion. *Id.* An abuse of discretion occurs only when the trial court arrives at a conclusion that is clearly against logic and the natural inferences to be drawn therefrom. *Id.*

T.R. 4.4(C) governs *forum non conveniens* determinations. It provides:

(C) More convenient forum. Jurisdiction under this rule is subject to the power of the court to order the litigation to be held elsewhere under such reasonable conditions as the court in its discretion may determine to be just.

In the exercise of that discretion the court may appropriately consider such factors as:

(1) Amenability to personal jurisdiction in this state and in any alternative forum of the parties to the action;

(2) Convenience to the parties and witnesses of the trial in this state in any alternative forum;

---

**3.** Pursuant to T.R. 4.4(C), a defendant may seek a more convenient forum only if the trial court has acquired *in personam* jurisdiction under T.R. 4. *See Adams v. Budgetel Inns, Inc.* (1990), Ind.App., 550 N.E.2d 346, 348, *trans. denied.* The trial court erred in this case, therefore, when it concluded it did not have personal jurisdiction and then dismissed based on *forum non conveniens.* Because we conclude the trial court did have personal jurisdiction and Virginia is a more convenient forum, we nonetheless affirm the trial court's dismissal.

(3) Differences in conflict of law rules applicable in this state and in the alternative forum; or

(4) Any other factors having substantial bearing upon the selection of a convenient, reasonable and fair place of trial.

This court has recognized the purpose of T.R. 4.4(C) is to permit a cause to be litigated in another state upon a showing that litigation in Indiana is so inconvenient that substantial injustice is likely to result. *Matter of Trust Created Under Agreement Dated September 19, 1983, by Johnson* (1984), Ind.App., 469 N.E.2d 768, *trans. denied.*

The record in this case supports the trial court's decision to dismiss the Freemonds' complaint based on *forum non conveniens.* The actual creation, management, and dissolution of Williamsburg Suites, Ltd., took place in Virginia. The partnership property is located in Virginia, as are the partnership records, including the receipts, expenditures, hotel vacancy rates, and management and marketing records.

Furthermore, all of the defendants, with the exception of Hillenbrand, are either Virginia residents or a Virginia corporation and are amenable to personal jurisdiction in Virginia. Likewise, other persons or entities who may become involved in this litigation are amenable to personal jurisdiction in Virginia, although they are probably not subject to personal jurisdiction in Indiana. Litigating this matter in Indiana would threaten the possibility of joining all potential parties in one action, a factor that clearly supports dismissing the Indiana action. *See Piper Aircraft Co. v. Reyno* (1981), 454 U.S. 235, 259, 102 S.Ct. 252, 267–68, 70 L.Ed.2d 419, 438. Forcing the nonresident defendants to resort to subsequent litigation in Virginia for indemnity or contribution would be burdensome. *Id.* Even more important, however, the record reveals there is already litigation pending in Virginia regarding the same facts that led to the Freemonds' lawsuit.

Finally, potential witnesses are residents of Virginia, not Indiana. Continuing this lawsuit in Indiana would likely deprive the nonresident defendants from producing live testimony in their defense at trial. Instead, the nonresident defendants would probably be forced to take depositions of the witnesses, and then offer those depositions into evidence at trial pursuant to T.R. 32(A)(3)(b).

Under these facts, the trial court did not abuse its discretion when it concluded Virginia is a more convenient forum for the Freemonds' action.

## CONCLUSION

The trial court erred when it concluded it did not have personal jurisdiction over the nonresident defendants. The error was harmless, however, in light of the trial court properly concluding Virginia is a more convenient forum for this litigation. The trial court's judgment dismissing the Freemonds' action is affirmed.

ROBERTSON, J., concurs.

CHEZEM, J., concurs in result.